446 A.2d 614

## BOISE CASCADE CORPORATION

v.

## EAST STROUDSBURG SAVINGS ASSOCIATION.

**Appeal of Edward W. DeVINNEY and Jean A. DeVinney, Intervenors.**

Superior Court of Pennsylvania.

Argued April 6, 1981.

Filed June 4, 1982.

William H. Robinson, Jr., Stroudsburg, for appellant.

Mark Love, Stroudsburg, for appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

This appeal is from an order denying appellants' petition to intervene in an action in assumpsit brought by Boise Cascade Corporation against East Stroudsburg Savings Association. Boise Cascade has filed a motion to quash the appeal as interlocutory. We grant the motion.

–1–

Often, in deciding to quash an appeal as interlocutory, we do not consider the merits of the case. If, for example, we find that an appeal is from an order dismissing exceptions, instead of from a judgment entered on the docket, we look no further. *Penstan Supply, Inc. v. Hay*, 283 Pa.Superior Ct. 558, 424 A.2d 950 (1981). It would be pointless in such a case to consider the merits. We are a court of limited jurisdiction, and unless a case is within our jurisdiction we have no power to decide it, no matter how compelling its merits might be. *Toll v. Toll*, 293 Pa.Superior Ct. 549, 439 A.2d 712 (1981).

 Sometimes, however, the decision whether to quash an appeal is interwined with a consideration of the merits, for "[t]he finality of an order is a judicial conclusion which can be reached only after examination of its ramifications." *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 228, 348 A.2d 734, 735 (1975). This is especially so when the appeal is from an order denying a petition to intervene.

[A]s a rule, an appeal will not lie from an order refusing leave to intervene, because such an order is not a final one, [but] cases may arise where a denial of a petition to intervene would be a practical denial of relief to which the petitioner for intervention is entitled and can obtain in no other way; and in such cases the refusal to permit an intervention is a final order or decree as to the petitioner. *Frey's Estate*, 237 Pa. 269, 271, 85 A. 147, 148 (1912) (citations omitted).

Unless we consider the merits—or "ramifications"—of a case, we cannot tell whether an order denying a petition to intervene *is* "a practical denial of relief to which the petitioner for intervention is entitled." *See, e.g., Taub v. Merriam,* 251 Pa.Superior Ct. 572, 380 A.2d 1245 (1977) (deciding appeal); *Richard Held Builders, Inc. v. A. G. Allebach, Inc.,* 266 Pa.Superior Ct. 101, 403 A.2d 113 (1979) (quashing appeal).[1]

Here the lower court concluded that if appellants were a party to Boise Cascade's action against East Stroudsburg Savings, they would be entitled to no relief. The issue we must decide is whether that conclusion was correct. If it was, then under *Frey's Estate, supra,* the lower court's order denying appellants' petition to intervene in the action is not a final order, and appellant's appeal must be quashed.

–2–

Appellants wanted to build a house on a lot they owned in a development known as Saw Creek Estates, in Pike County, Pennsylvania. On July 3, 1978, they got a loan, secured by a mortgage on the lot, from East Stroudsburg Savings Association. The house was to be built by Tahoe Homes, Ltd., and on the same day as they got their loan, appellants entered into an agreement with East Stroudsburg Savings by which it was to pay Tahoe Homes from the proceeds of the loan according to a certain schedule of payments, or "draws," as the house was built.

1. In federal practice the appealability of an order denying intervention is stated in a manner similar to the rule of *Frey's Estate, supra.* This approach has been criticized as "a fictional barrier insofar as it pretends to restrict appellate jurisdiction. Since the rule makes the initial question of jurisdiction turn on the merits of the question being raised, *i.e.,* whether intervention was of right or invoked the sound discretion of the trial court, as a practical matter the appellate court must decide the merits whether it dismisses the appeal, affirms, or reverses." 3B Moore's Federal Practice ¶ 24.15, at 564–65 (2d ed. 1976) (citations omitted). It has therefore been argued that all denials of intervention should be regarded as final orders. *Id.;* Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv.L.Rev. 721, 748–51 (1968).

On July 7, 1978, Tahoe Homes entered into an agreement with Boise Cascade Corporation for the purchase of a pre-fabricated house, to be delivered to appellants' lot. On August 10, 1978, before the house had been delivered, appellants and Tahoe Homes executed an assignment authorizing East Stroudsburg Savings to pay "directly to Boise Cascade . . . the approximate sum of $13,000 out of the 2 and 3rd draws" of the proceeds of the loan that East Stroudsburg Savings had made to appellants. On August 21 East Stroudsburg Savings accepted this assignment and agreed to pay Boise Cascade accordingly.

Boise Cascade completed delivery of the pre-fabricated house to appellants' lot on September 26, 1978, and shortly thereafter requested payment of $14,071.15 from East Stroudsburg Savings. Appellants, however, complained that Tahoe Homes had not put up the house properly and had ceased work on it, and at appellants' request, East Stroudsburg Savings did not pay Boise Cascade.

On June 6, 1979, Boise Cascade filed a complaint in assumpsit against East Stroudsburg Savings. On August 2, 1979, East Stroudsburg Savings filed a petition for inter-pleader. On October 1, 1979, appellants filed a petition to intervene. On July 25, 1980, the lower court denied both petitions. East Stroudsburg Savings did not appeal the denial of its petition for interpleader, so only the denial of appellants' petition to intervene is before us.

Appellants argue that they are entitled to intervene because their claims against Tahoe Homes are such that Tahoe Homes would not be entitled to any further payment from the proceeds of the loan. Appellants assert no claim against Boise Cascade. In support of their argument, appellants say that the assignment of August 10, 1978, should be viewed as involving only Tahoe Homes as assignor and Boise Cascade as assignee. If this were true their petition to intervene would appear to have merit. Boise Cascade's right to payment would depend on Tahoe Homes' right to payment, which in turn would depend on Tahoe Homes' performance. *Northwestern National Bank v. Commonwealth*, 345 Pa. 192,

27 A.2d 20 (1942); Restatement (Second) of Contracts § 336 (1979). In other words: If appellants are right in saying that Tahoe Homes has performed so poorly that it would not be entitled to any more payments, then East Stroudsburg Savings should not pay Boise Cascade. If appellants are not permitted to intervene, and East Stroudsburg Savings pays Boise Cascade, appellants will be required to bring a separate action against East Stroudsburg Savings to recover the payment, for appellant will still be liable on the loan that East Stroudsburg Savings made to them.

The difficulty with appellants' argument is that the assignment of August 10, 1978, does not involve only Tahoe Homes as assignor and Boise Cascade as assignee. Instead, appellants and East Stroudsburg Savings are also parties to the assignment—appellants as borrowers of the funds from which Boise Cascade is to be paid, and East Stroudsburg as lender of the funds and as the party charged with paying Boise Cascade out of the funds.

In full, the assignment reads as follows (the assignment was a printed form, and the parts we have underlined were filled in):

Date August 10, 1978
TO: EAST STROUDSBURG SAVINGS ASSOCIA-TION
75 Washington St
East Stroudsburg, PA 18301
Gentlemen:

East Stroudsburg Savings Assn. is hereby authorized by the undersigned to pay and disburse directly to Boise Cascade Manufactured Housing Division/Eastern Operations, located at 61 Perimeter Park East, Atlanta, Georgia 30341, the approximate sum of $13,000 out of the 2 & 3rd draws (Draw Schedule Attached) of the recorded construction loan and/or mortgage loan on the property known as LOT 607, SECTION 10, SAW CREEK ESTATES, PIKE COUNTY, BUSHKILL, PENNA. 18324.

This assignment is made to provide a means for payment and secure the assignee against any loss by reason of

credit extended or to be expended [sic] for materials required in the construction of buildings upon the above described property. This assignment is made in consideration for credit extended or to extend to TAHOE HOMES LTD. and may not be changed without the mutual consent in writing by Boise Cascade Manufactured Housing Division/Eastern Operations and EAST STROUDSBURG SAVINGS ASSN.

/s/ _____
Tahoe Homes, Ltd.

/s/ _____
Borrower

/s/ _____
Borrower

The undersigned does hereby irrevocably consent to the within assignment and agrees to be bound by the terms thereof, and to pay the amount therein* assigned directly to Boise Cascade Manufactured Housing Division/Eastern Operations, 61 Perimeter Park East, Atlanta Georgia 30341.

Dated at East Stroudsburg, State of Pennsylvania, this 21st day of August, 1978.

East Stroudsburg Savings Association

BY: /s/ _____

Officer Title

[* emphasized in the original]

■ We agree with the lower court that the intent of this assignment was to give Boise Cascade a direct claim on the proceeds of the loan from East Stroudsburg Savings to appellants. The agreement by which Tahoe Homes purchased the pre-fabricated house from Boise Cascade is part of the record; it did not provide for Boise Cascade to extend any credit to Tahoe, but instead provided that payment was to be on delivery. The assignment was executed after this agreement but before Boise Cascade delivered the house. We assume that this was done because Tahoe Homes realized that it would not be able to pay on delivery, but the reason does not really matter to us. Whatever the reason,

Boise Cascade extended credit to Tahoe Homes only after appellants and East Stroudsburg Savings had joined in executing an assignment that recited that its purpose was to protect Boise Cascade "against any loss," and provided that Boise Cascade was to be paid directly by East Stroudsburg Savings.

The lower court found that East Stroudsburg Savings was in the position of one who has received and holds money for the specific purpose of paying another after certain work is done; once the work is done, his duty is to pay the money over, regardless of objections at the time from the person who provided the money. *See Warrington v. Mengel*, 41 Pa.Superior Ct. 362 (1909). Here, the lower court reasoned, once Boise Cascade had delivered the pre-fabricated house, its work was done and it was entitled to be paid. However, as we have seen, the assignment provided that the payment to Boise Cascade was to be out of the second and third draws. The draw schedule provided that the second draw was payable when the house was under roof and closed in, and the third draw when the rough plumbing and wiring were complete and the house was ready for interior painting. Thus, although by the terms of the agreement by which Tahoe Homes purchased the house, Boise Cascade was entitled to payment upon delivery, by the terms of the assignment, it was not entitled to payment until the house was largely completed.

Although the lower court appears to have overlooked this feature of the assignment, its error was harmless. The executive vice president of East Stroudsburg Savings testified on deposition that based on the latest inspection reports, the house was 85% complete, so that according to the draw schedule, the second and third draws were payable.[2] The draw schedule and the inspection re-

---

**2.** It appears from the deposition that after Tahoe Homes ceased work on the house, appellants made other arrangements to complete it. By the time this dispute reached the lower court, Tahoe Homes was out of business and had filed for bankruptcy.

ports were made exhibits to the deposition and are part of the record. Thus, the record shows that payment by East Stroudsburg Savings to Boise Cascade was due before the case was heard by the lower court.[3] Since Boise Cascade's right to payment from the proceeds of the construction loan is under the terms of the assignment independent of any claims appellants may have against Tahoe Homes, the lower court did not err in denying appellants' petition to intervene. Although it might be more realistic to say that we therefore affirm the order of the lower court,[4] we must instead, under the rule of *Frey's Estate, supra*, quash this appeal.[5]

SO ORDERED.

**3.** Other cases, including *Boyd Estate*, 394 Pa. 225, 146 A.2d 816 (1958), cited by *Boise Cascade*, and *In the Matter of Gebco Investment Corporation*, 641 F.2d 143 (3d Cir. 1981), also hold that assignments similar to the one in this case create a direct interest in an assignee to the proceeds of a construction loan. Although those cases are consistent with the result we reach here, to the extent that they recognize that this assignment may give the assignee an interest that is not subject to the claims of the trustee in bankruptcy, they are distinguishable in that in them it was not contended that the subcontractor's right of payment should be defeated by the contractor's failure to perform.

**4.** *See* note 1, *supra.*

**5.** We intimate no opinion either as to whether appellants will have standing to appeal from a subsequent final order in this case, or as to whether, if they do have standing, they will be bound in any way by our conclusion here that the lower court correctly determined that they have no interest in the fund held by East Stroudsburg Savings Association. These appear to be undecided questions in Pennsylvania, and they are not now before us. An annotation in the American Law Reports indicates that courts that have considered the question of standing do not agree on the answer. Annot., 15 A.L.R.2d 336, 368.