483 A.2d 1339

**CAPITAL CITIES MEDIA, INC. t/d/b/a the Wilkes-Barre Times Leader and NEP Communications, Inc. t/d/b/a WNEP-TV News, Applicants,**

**v.**

**Patrick J. TOOLE, Jr., Judge of the Court of Common Pleas of Luzerne County, Respondent.**

Supreme Court of Pennsylvania.

Decided Nov. 14, 1984.

14

Ralph E. Kates, III, Harry V. Cardoni, Wilkes-Barre, Lawrence M. Ludwig, Scranton, for applicant.

Howland W. Abramson, Philadelphia, Administrative Office of Pa. Courts Phila. Co.; Patrick J. Toole, Jr., Robert J. Gillespie, Jr., Basil G. Russin, Wilkes-Barre, for respondent.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This opinion is filed in response to an order of the United States Supreme Court vacating an order of this Court and remanding for clarification of the record. The question to be addressed is the basis of our denial of an application for writ of prohibition, filed on behalf of a newspaper and a television station involved in the coverage of a criminal trial, challenging the constitutionality of certain restrictive orders issued by the trial court.

### I.

This controversy arose shortly before the commencement of trial in the case of *Commonwealth v. George E. Banks* in the Luzerne County, Pennsylvania, Court of Common Pleas.[1] The defendant in that matter was charged with thirteen (13) counts of criminal homicide. After the defendant's motion for a change of venire had been granted and a jury empanelled in Allegheny County, Pennsylvania, 42 Pa.C.S. § 8702; Pa.R.Crim.P. 312(d), the trial judge, the Honorable Patrick J. Toole, Jr., respondent herein, issued two pretrial restrictive orders. The first provided, *inter alia,* that no one would be permitted to talk to, record, photograph, televise or videotape the jurors during their service in the case, that all witnesses and jurors were prohibited from giving public interviews or making extrajudicial statements about the case until the jury was discharged, and that only counsel, court personnel, witnesses and jurors would be permitted to handle the exhibits except by order of the court.

The second order provided for the sequestration of the jury beginning June 5, 1983, the day before trial, to continue until the jury was discharged. Among the other conditions prescribed in aid of the sequestration order were the provisions that "[n]o person shall print or announce in any way the names or addresses of any juror" and that "[n]o

1. Criminal Nos. 1290, 1506, 1507, 1508, 1519, 1520 and 1524 of 1982.

person shall draw sketches, photographs [sic], televise or videotape any juror or jurors during their service in these proceedings...."

Trial commenced on June 6, 1983. On June 13, 1983, applicants Capital Cities Media, Inc. and NEP Communications, Inc. filed in this Court an "Application for Leave to File Original Process Pursuant to Pa.R.A.P. Rule 3307 and Application for Extraordinary Relief Pursuant to Pa.R.A.P. 3309." In their pleading the applicants sought to challenge the above-described provisions of Judge Toole's pretrial orders as violative of their First Amendment and State Constitutional rights, and requested a writ of prohibition barring enforcement of those portions of the orders. On June 21, 1983, defendant Banks was convicted of twelve (12) counts of first degree murder, one count of third degree murder and a number of other offenses. The jury returned a sentencing verdict of death on all twelve (12) first degree murder convictions on June 22, 1983.[2]

This Court entered a *per curiam* order denying a writ of prohibition on June 30, 1983. On July 13, 1983, Mr. Justice Brennan, acting as Circuit Justice for the Third Circuit, granted a stay of paragraph two (2) of Judge Toole's sequestration order, which prohibited the publication of the names and addresses of the jurors in the *Banks* case.[3] 463 U.S. 1303, 103 S.Ct. 3524, 77 L.Ed.2d 1284 (1983). A stay of the other challenged provisions was denied.[4] This Court received notice of the filing of the applicants' petition for

---

2. Formal sentencing has been delayed pending disposition of post-verdict motions.

3. The application for a stay was initially presented to Mr. Justice Brennan on June 18, 1983 but was held pending action by this Court on a similar application filed on June 20, 1983.

4. Mr. Justice Brennan's order in pertinent part states:
 THE APPLICATION FOR STAY is denied as to paragraph No. 6 of said order, which prohibits any person from sketching or photographing jurors during their service, because it appears that the order is inoperative as to its own terms. The application for stay of paragraph No. 11 of the Order Pursuant to Pa. Rules Crim.Proc. 326, June 3, 1983, which restricts access to exhibits, is denied without prejudice to its renewal in the event a request for access to exhibits is denied by the trial judge.

writ of certiorari on October 24, 1983. On April 23, 1984, the United States Supreme Court granted that petition, vacated this Court's judgment and remanded the cause for further proceedings to clarify the basis of our denial of relief.[5] — U.S. ——, 104 S.Ct. 2144, 80 L.Ed.2d 378 (1984). This opinion is intended to provide such clarification.

## II.

Since the form of relief requested by the applicants was a writ of prohibition, the nature and purpose of that writ is essential to our discussion. Prohibition is cogently explained by the late Chief Justice, then Justice Horace Stern in the leading case of *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 61 A.2d 426 (1948):

Prohibition is a common law writ of extremely ancient origin,—so ancient, indeed, that several forms for its use are set forth in Glanville, the earliest known treatise on English law (1187); in the following century it was recognized by Bracton as an established part of the common law. Being a prerogative writ of the king it was originally employed exclusively by the Court of King's Bench, but subsequently issued out of the Courts of Chancery, Common Pleas and Exchequer as well. Its principal purpose is to prevent an inferior judicial tribunal from assuming a jurisdiction with which it is not legally vested in cases where damage and injustice would otherwise be likely to follow from such action. It does not seek relief from any alleged wrong threatened by an adverse party; indeed it is not a proceeding between private litigants at all but solely between two courts, a superior and an inferior, being the means by which the former exercises superintendence over the latter and keeps it within the limits of its rightful powers and jurisdiction.

... The writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution

5. The official mandate of the United States Supreme Court is dated May 23, 1984.

18

and forbearance and as an extraordinary remedy in cases of extreme necessity, to secure order and regularity in judicial proceedings if none of the ordinary remedies provided by law is applicable or adequate to afford relief. It is a writ which is not of absolute right but rests largely in the sound discretion of the court. It will never be granted where there is a complete and effective remedy by appeal, certiorari, writ of error, injunction, or otherwise: see *First Congressional District Election*, 295 Pa. 1, 13, 144 A. 735, 739, 740, and cases referred to in the dissenting opinion in *Philadelphia County Grand Jury Investigation Case*, 347 Pa. 316, 330–334, 32 A.2d 199, 206–208; also *Roche, U.S. District Judge, v. Evaporated Milk Association*, 319 U.S. 21, 26 [63 S.Ct. 938, 941, 87 L.Ed. 1185]; *United States Alkali Export Association, Inc., v. United States*, 325 U.S. 196 [65 S.Ct. 1120, 89 L.Ed. 1554]. As pointed out in the last cited authority (p. 203 [65 S.Ct. at p. 1125]), "appellate courts are reluctant to interfere with decisions of lower courts, even on jurisdictional questions, which they are competent to decide and which are reviewable in the regular course of appeal.... The [extraordinary] writs may not be used as a substitute for an authorized appeal."
*Id.*, 360 Pa. at 97–98, 102, 61 A.2d at 428, 430.

 It must be emphasized that the writ of prohibition is limited in scope to questions of jurisdiction; the writ will not lie to correct errors of law. This traditional distinction is best stated in *Commonwealth v. Mellon National Bank & Trust Co.*, 360 Pa. 103, 61 A.2d 430 (1948):

Ferris in *Extraordinary Legal Remedies* (p. 439 et seq.) said: "It is well settled that a writ of prohibition may not be used to usurp or perform the functions of an appeal, writ of error or certiorari, or to correct any mistakes, errors or irregularities in deciding any question of law or fact within its jurisdiction. The office of the writ, as at common law, is to prevent an unlawful assumption of jurisdiction, not to correct mere errors and irregularities in matters over which the court has cogni-

zance. Where the general scope and purpose of the action is within the jurisdiction of the court, any error or overstepping of its authority in a portion of its judgment, or any other error in its proceedings, is only ground for a review or appeal, and not prohibition. That is to say, where there is authority to do the act, but the manner of doing it is improper, the writ will not lie. In other words, whatever power is conferred may be exercised, and, if it be exercised injudiciously, erroneously or irregularly, it amounts to error merely and not to a usurpation or excess of jurisdiction. In such a case, however gross the error, irregularity or mistake, the writ does not lie, ... for the reason that there has been no usurpation or abuse of power."

*Id.*, 360 Pa. at 107, 61 A.2d at 433.

■ In addition to total absence of jurisdiction, our cases have extended the application of the writ of prohibition to encompass situations in which an inferior court, which has jurisdiction, exceeds its authority in adjudicating the case. This latter situation has been termed an "abuse of jurisdiction." *Philadelphia Newspapers, Inc. v. Jerome*, 478 Pa. 484, 387 A.2d 425 (1978), *appeal dismissed*, 443 U.S. 913, 99 S.Ct. 3104, 61 L.Ed.2d 877 (1979); *Commonwealth v. Mullen*, 460 Pa. 336, 333 A.2d 755 (1975); *Commonwealth v. Smart*, 368 Pa. 630, 84 A.2d 782 (1951); *Schlesinger Petition*, 367 Pa. 476, 81 A.2d 316 (1951); *McNair's Petition*, 324 Pa. 48, 187 A. 498 (1936). However, it must be emphasized that even in this latter category of cases the concern is with the jurisdiction as exercised as opposed to an error or mistake in the application of the law to the facts.

■ The criteria for granting a writ of prohibition are satisfied by meeting a two-pronged test derived from the language of *Carpentertown Coal, supra. In re Reyes*, 476 Pa. 59, 381 A.2d 865 (1977); *Commonwealth ex rel. Specter v. Shiomos*, 457 Pa. 104, 320 A.2d 134 (1974). First, it must be established that there is no adequate remedy at law to afford relief; second, there must be extreme necessity for the relief requested to secure order and regularity in judi-

cial proceedings. *Spykerman v. Levy*, 491 Pa. 470, 421 A.2d 641 (1980); *In re Investigating Grand Jury of Philadelphia County*, 487 Pa. 68, 408 A.2d 1099 (1979); *In re Reyes, supra; Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975) *cert. denied and appeal dismissed,* 423 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94 (1976); *Commonwealth ex rel. Specter v. Shiomos, supra; Petition of Specter,* 455 Pa. 518, 317 A.2d 286 (1974); *Carpentertown Coal, supra.*

 Thus, the writ of prohibition under Pennsylvania law is an extraordinary remedy invoked to restrain courts and quasi-judicial bodies from usurping jurisdiction which they do not possess or exceeding the established limits in the exercise of their jurisdiction. The writ is not one of right but rather rests with the sound discretion of the appellate court. A writ will issue only upon a showing of extreme necessity and the absence of any available remedy at law. Where relief may be sought through ordinary avenues of judicial review, the writ will not lie.

## III.

The gravamen of the applicants' complaint is that the challenged provisions of Judge Toole's pretrial orders amount to prior restraints on publication violating both the Pennsylvania and federal Constitutions.[6] Applicants also aver that the orders are unnecessary to the protection of the defendant's rights to due process and a fair trial and that there is no other compelling state interest to support the orders. Finally, applicants maintain that Rules 326 and 1111 of the Pennsylvania Rules of Criminal Procedure are unconstitutional to the extent they are interpreted as permitting the issuance of such orders. These questions were not reached in our determination that the application for the writ of prohibition should be denied. That judgment was predicated solely on the ground that the writ did not lie for the resolution of the contentions raised.

6. U.S. Const. amends. I, 14; Pa. Const. Art. I §§ 7, 11.

A writ of prohibition was an improper remedy for several reasons. First, the applicants made no attempt to establish that the court was either without jurisdiction or exceeded its jurisdiction in issuing the orders. In any event, such a claim would be unsuccessful. It is clear that the trial court did have jurisdiction to fashion orders in an effort to ensure a fair trial by an impartial jury. Whether the exercise of that discretion offended constitutional mandate was a question cognizable in the normal appellate review process.

Rule 326 of the Pennsylvania Rules of Criminal Procedure, promulgated by this Court pursuant to its constitutional rulemaking power, Pa. Const. Art. V, § 10(c), accords broad discretion to the trial court to enter special orders in widely-publicized or sensational cases. The *Banks* case, by the applicants' own admission, was one of local, state and national interest. Rule 326 provides:

> In a widely-publicized or sensational case, the Court, on motion of either party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of the accused to a fair trial by an impartial jury, the seating and conduct in the courtroom of spectators and news media representatives, the management and sequestration of jurors and witnesses, and any other matters which the Court may deem appropriate for inclusion in such an order. In such cases it may be appropriate for the court to consult with representatives of the news media concerning the issuance of such a special order.

Pa.R.Crim.P. 326.

Clearly, here the objections raised did not go to the jurisdiction of the court to formulate orders for the protection of the defendant's right to a fair trial, but rather challenged the propriety of those orders in light of constitutional restraints. Thus, this was not the subject matter for a writ of prohibition.

■ Moreover, contrary to their assertions there was an avenue of relief available to applicants. We recognize the legitimacy and importance of the interest of the news media in judicial proceedings. The media's right of expression must necessarily include the right to be heard when that interest is adversely affected. *See, e.g., Commonwealth v. Hayes,* 489 Pa. 419, 414 A.2d 318, *cert. denied,* 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980) (Opinion of Nix, J.); *Commonwealth v. Buehl,* 316 Pa.Super. 215, 462 A.2d 1316 (1983); *Petition of Daily Item,* 310 Pa.Super. 222, 456 A.2d 580 (1983); *see also United States v. Criden,* 675 F.2d 550 (3d Cir.1982). In Pennsylvania there is a procedure for obtaining expedited review which affords complete relief where an alleged abridgment of the rights of the media is at issue.

■ The first step in this procedure would have been for the applicants to petition the trial court to intervene for the purpose of challenging the legality of the pre-trial orders. *See, e.g., Commonwealth v. Hayes, supra.* Such an action is in accordance with our well-established and strongly held view that it is essential to meaningful judicial review that objections should be addressed to the court of first instance to permit that court to evaluate such claims and to have the opportunity to correct its own errors. *Commonwealth v. Ford-Bey,* 504 Pa. 284, 472 A.2d 1062 (1984); *Tagnani v. Lew,* 493 Pa. 371, 426 A.2d 595 (1981); *Azzarello v. Black Bros. Co., Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978); *Commonwealth v. Brightwell,* 479 Pa. 541, 388 A.2d 1063, *cert. denied,* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 664 (1978); *Commonwealth v. Beatty,* 474 Pa. 104, 376 A.2d 994 (1977); *Benson v. Penn Central Transportation Co.,* 463 Pa. 37, 342 A.2d 393 (1975); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). This practice creates a record from which the grounds of the lower court's determination may be readily discerned in the event review by an appellate court becomes necessary. An order denying leave to intervene in these sensitive

circumstances is immediately appealable. *See Frey's Estate*, 237 Pa. 269, 85 A. 147 (1912); *see generally Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978); *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975).

If the applicants had successfully intervened, they would have been in a position to seek a stay from the trial court pending an appeal in the event relief was denied. *See* Pa.R.A.P. 1732(a). The denial of such temporary relief would be subject to immediate review. *See* Pa.R.A.P. 1732.

The course open to a media petitioner upon the denial of relief in the trial court is exemplified in *Commonwealth v. Hayes, supra.* There, the petitioners, having unsuccessfully pursued the avenues described above, asked this Court to exercise its plenary jurisdiction over the ongoing criminal prosecution and stay proceedings pending our review. Both requests were granted and the petitioners ultimately prevailed. It is important to stress that such a procedure is available to obtain a prompt, direct adjudication of a constitutional claim by the state's highest court, bypassing the intermediate appellate court which ordinarily has jurisdiction of the vast majority of appeals from orders of the court of common pleas.

■ We are sensitive to the public importance of claims involving the right of the press to report on judicial proceedings and are aware of the danger that relegation of such claims to the ordinary avenues of appeal may effectively prevent meaningful review and the vindication of the rights asserted. Nevertheless, effective review requires the observance of orderly procedures designed to fully ventilate the issues. In this respect the remedy outlined above is not only adequate but highly preferable. Thus the issue applicants seek to raise was not before this Court.

For the foregoing reasons, the application for writ of prohibition was properly denied. Accordingly, this Court's June 30, 1983 order is reinstated.