554 A.2d 954

**William R. STENGER, Donna A. Stenger, Craig Stenger and Barry Stenger, Minors by Their Parents and Natural Guardians William and Donna Stenger**

v.

**LEHIGH VALLEY HOSPITAL CENTER, Samuel Huston, Theodore J. Matulewicz, M.D., Barry J. Slaven, M.D., Hospital Central Services, Inc., H.C.S.C. Blood Center T/A Samuel W. Miller Memorial Blood Center, Lyndall Molthan, M.D., and Joseph Yelo and the Morning Call, Inc.**

**Appeal of The MORNING CALL, INC.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1988.

Filed March 1, 1989.

Malcolm J. Gross, Allentown, for appellant.
Pamela W. Higgins, Philadelphia, for Stenger, appellees.
Edward C. McCardle, Allentown, for Lehigh, appellees.
David L. Haber, Pittsburgh, for H.C.S.C., appellees.

Before WIEAND, McEWEN and MELINSON, JJ.

MELINSON, Judge:

This is an appeal from an order of the Court of Common Pleas of Lehigh County, denying the petition to intervene filed by appellant, The Morning Call, Inc. (hereinafter "The Morning Call").

In March of 1987, William R. Stenger, Donna A. Stenger, Craig Stenger, and Barry Stenger, the plaintiffs in the underlying action, filed a complaint against Lehigh Valley Hospital Center (hereinafter "LVHC"), Samuel Huston, Theodore J. Matulewicz, M.D., Barry J. Slaven, M.D., Hospital Central Services, Inc., H.C.S.C. Blood Center t/a Samuel W. Miller Memorial Blood Center, Lyndall Molthan, M.D., and Joseph Yelo, the defendants in the underlying action. All of these parties are appellees in the action at bar. The complaint in the underlying action alleged that while receiving treatment at LVHC, Donna A. Stenger was transfused with units of blood which were contaminated with Acquired Immune Deficiency Syndrome (hereinafter "AIDS"), and from this transfusion she contracted the AIDS virus. The complaint also alleges that shortly after Donna Stenger was diagnosed as having AIDS, her husband, William Stenger, and son, Craig Stenger, tested positive for exposure to the virus.

Discovery proceedings began with the deposition of William Stenger on April 15, 1987. The deposition was adjourned prior to completion. The Stengers filed a motion for a protective order, contending that such an order was necessary to preserve the confidentiality of future depositions. Following argument and with the agreement of counsel, the trial judge, the Honorable John E. Backenstoe, President Judge of the Court of Common Pleas of Lehigh County, entered a protective order on April 30, 1987, relating to future depositions.[1]

1. Rule 4012 of the Pennsylvania Rules of Civil Procedure provides the grounds upon which a trial court can implement a protective order. In relevant part, that rule provides:

On May 11, 1987, The Morning Call, a Lehigh County newspaper, filed a petition to intervene in this lawsuit in order to file exceptions to the protective order. Thereafter, the trial court ordered the exceptions filed and issued upon all of the appellees a rule to show cause why the newspaper should not be permitted to intervene for the purpose of seeking to vacate the protective order. The appellees filed responses as directed by the trial court, opposing the petition to intervene and addressing the substantive issues raised by the exceptions. Oral argument was heard by President Judge Backenstoe on July 1, 1987, regarding The Morning Call's right to intervene and the merits of the exceptions. On November 6, 1987, the court issued an opinion and order denying intervention and rejecting each of the exceptions filed by The Morning Call. In pertinent part, the order provided:

1. No persons other than parties and their counsel, and experts and/or investigators executing Exhibit "A" hereto, shall attend any of the depositions scheduled or to be scheduled in this case.

2. There shall be no disclosure, copying, summarizing or use of the information discovered in depositions, interrogatories or any other formal discovery process by any party in this case, other than for use in the preparation of pleadings, or for preparation and trial of this case, including review by experts of the parties [sic] choosing and all such documents shall be and remain under seal.

■ The Morning Call filed a notice of appeal with this court from Judge Backenstoe's order. On April 12, 1988,

(a) Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense, including one or more of the following: ...

(2) that discovery or deposition shall be only on specified terms and conditions ...; ...

(6) that discovery or deposition shall be conducted with no one present except persons designated by the court;

(7) that a deposition shall be sealed and shall be opened only by order of the court;

Pa.R.Civ.P. 4012.

we entered an order directing the parties to brief the threshold issue of whether the appeal is from a final order or is interlocutory.

Accordingly, we must first address whether the trial court order denying The Morning Call's petition to intervene is a final, appealable order. In the seminal case on the subject, the Pennsylvania Supreme Court held that "[a]s a rule, an appeal will not lie from an order refusing leave to intervene, because such order is not a final one, [however] cases may arise where a denial of a petition to intervene would be a practical denial of relief to which the petitioner for intervention is entitled and can obtain in no other way; and in such cases the refusal to permit an intervention is a final order or decree as to the petitioner[.]" *Frey's Estate,* 237 Pa. 269, 271, 85 A. 147, 148 (1912); *see also Scharnitzki v. Bienenfeld,* 368 Pa.Super. 610, 534 A.2d 825 (1987). Because a petition to intervene might be the only way a petitioner can obtain judicial relief, the decision whether to quash an appeal from an order denying a petition to intervene is intertwined with a consideration of the merits of the case, for "the finality of an order is a judicial conclusion which can be reached only after examination of its ramifications." *Boise Cascade Corp. v. East Stroudsburg Savings Association,* 300 Pa.Super. 279, 281, 446 A.2d 614, 615 (1982), *quoting Bell v. Beneficial Consumer Discount Company,* 465 Pa. 225, 228, 348 A.2d 734, 735 (1975). Therefore, we must examine the merits of The Morning Call's petition in order to determine whether the trial court's order "is a practical denial of relief to which The Morning Call is entitled." *See Boise Cascade,* 300 Pa.Super. at 282, 446 A.2d 614.

■ Whether to allow intervention is a matter vested in the discretion of the trial court and that court's decision will not be disturbed on appeal absent a manifest abuse of its discretion. *Wilson v. State Farm Mutual Automobile Insurance Company,* 512 Pa. 486, 517 A.2d 944 (1986); *M. London, Inc. v. Fedders Corp.,* 306 Pa.Super. 103, 452 A.2d 236 (1982). A trial court will not be found to have abused

its discretion unless the record discloses that the judgment exercised was manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will. *M. London Inc.*, 306 Pa.Super. at 106–107, 452 A.2d 236.

Pennsylvania Rule of Civil Procedure 2327 sets forth the four categories of persons who may be permitted to intervene in a civil action. The Rule provides as follows:

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

(1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

(2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or

(3) such person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action.

Although not specifically stated in its brief to this court, The Morning Call is presumably basing its argument on subsection four (4) of Rule 2327. Specifically, The Morning Call claims that both federal constitutional law and common law support the contention that The Morning Call should be allowed to intervene to gain access to what The Morning Call terms the "judicial records" at issue.

Initially, we note, as the attorney for The Morning Call conceded at oral argument, that the media has no greater right of access to any judicial proceeding or document than does any other citizen. As stated by our Supreme Court, "access rights of the news media, and of the general public, are identical in scope." *Commonwealth v. Fenstermaker*, 515 Pa. 501, 504 n. 1, 530 A.2d 414, 416 (1987), *citing Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).

## I. CONSTITUTIONAL LAW

■ The First and Fourteenth Amendments to the United States Constitution implicitly guarantee the public a qualified right of access to a criminal trial. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); U.S. CONST. amend. I; U.S. CONST. amend XIV section 1. Furthermore, the Sixth Amendment mandates that an "accused shall enjoy the right to a speedy and public trial". U.S. CONST. amend. VI. In reviewing the history of criminal trials in England and in Colonial America, the *Richmond Newspapers* Court concluded that "a presumption of openness inheres in the very nature of a criminal trial under our system of justice." *Richmond Newspapers*, 448 U.S. at 573, 100 S.Ct. at 2825. The Court noted, however, that its holding "does not mean that the First Amendment rights of the public and representatives of the press are absolute." *Richmond Newspapers*, 448 U.S. at 581 n. 18, 100 S.Ct. at 2830 n. 18. "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965). Rather, "[t]he presumption of [First Amendment] openness [for access to a criminal trial] may be overcome ... by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was proper." *Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984). Thus, even in the context of a criminal trial, where federal Constitutional guarantees both explicitly and implicitly apply, access rights of the public are subject to limitation by judicial discretion and necessity.

The already compromised access rights of the public, and of the press as members thereof, are subject to further limitations when the proceeding is not criminal, but civil, involving only private litigants. *See Seattle Times v.*

*Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); *United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985).[2]

Moreover, and perhaps more significantly, a clear distinction must be drawn between First Amendment access rights to publish information acquired during trial, and access rights to publish information obtained in a pretrial discovery context. It is in a pretrial discovery context in preparation for a civil trial between private litigants, as is the circumstance at bar, that First Amendment access rights to litigation are at their nadir. *See Seattle Times Company v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). In fact, the Supreme Court of the United States has stated that an order prohibiting dissemination of pretrial discovery information is not even the kind of classic prior restraint that requires exacting First Amendment scrutiny. *Seattle Times*, 467 U.S. at 33, 104 S.Ct. at 2207; *see also Gannett Company v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).

In *Seattle Times*, the Supreme Court of the United States addressed the issue of a newspaper's right to publish information gathered through the pretrial discovery process in the course of civil litigation. The newspaper that sought to publish pretrial discovery information in that case *was actually a party to the lawsuit*. Nevertheless, the trial court granted Rhinehart, a leader of a religious group, a protective order which, like the protective order at bar, prohibited the newspaper from disseminating information obtained in the discovery process. As in the case at bar, the order did not apply to information gained through means outside of the discovery process. Further, the trial court's protective order in *Seattle Times* was based upon a Washington State rule almost precisely similar to this Com-

---

**2.** In *Smith*, the Third Circuit Court of Appeals held that a trial court can limit the public's access to a civil trial by showing that the denial serves an *important* governmental interest, and there is no less restrictive way to serve the government interest. *Smith*, 776 F.2d at 1109 (emphasis added). Clearly, this standard is less onerous than the *overriding* governmental interest standard necessary for denial of public access to criminal trials.

monwealth's protective order rule of civil procedure, utilized by the trial court at bar. *Compare* Washington Superior Court Civil Rule 26(c) *with* Pa.R.Civ.P. 4012.

The critical inquiry faced by the Supreme Court was whether a protective order precluding the party-newspaper from disseminating information gathered during the pretrial discovery process was an infringement on that party's First Amendment rights. The Court found that it was not. Initially, the Supreme Court analyzed the Washington State rule of civil procedure defining the parameters of discoverable information. The Court noted that under the rule, a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." *Seattle Times*, 467 U.S. at 29, 104 S.Ct. at 2205, *quoting* Washington Superior Court Civil Rule 26(b)(1). The rule further provides that discovery is not limited to matters that will be admissible at trial, so long as the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." *Seattle Times*, 467 U.S. at 29–30, 104 S.Ct. at 2206, *quoting* Washington Superior Court Civil Rule 26(b)(1). The Court commented that the only express limitations contained in the rules are that the information sought is not privileged, and is relevant to the subject matter of the pending action. Accordingly, the Court observed that much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action, and that the discovery rules often allow extensive intrusion into the private affairs of both litigants and third parties. *Seattle Times*, 467 U.S. at 30–33, 104 S.Ct. at 2206–2208. The Court noted:

"Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interroga-

tories has significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery." *Seattle Times*, 467 U.S. at 34–35, 104 S.Ct. at 2208.

In further commenting upon the private nature of the pretrial discovery process, the Court stated that "pretrial depositions and interrogatories are not public components of a civil trial." *Seattle Times*, 467 U.S. at 33, 104 S.Ct. at 2208. "Discovery rarely takes place in public. Depositions are scheduled at times and places most convenient to those involved. Interrogatories are answered in private." *Id.* at 33 n. 19, 104 S.Ct. at 2207 n. 19.

Because of these factors, the Court found that restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information. *Seattle Times*, 467 U.S. at 33, 104 S.Ct. at 2207. The Court stated that "the prevention of abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders," *Id.* at 35–36, 104 S.Ct. at 2209, and that "the trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Id.* at 36, 104 S.Ct. at 2209. Therefore, the Court held "that where ... a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." [3]

**3.** Federal Circuit courts have utilized the analysis of the *Seattle Times* Court and have held that a newspaper does not have an unconditional constitutional right of access to information generated through pre-

Although the issue in *Seattle Times* was freedom of the press to publish, rather than the public's right of access, the reasons that existed for the Supreme Court's holding in that case exist in the present case. Both cases are civil in nature. Both involve pretrial discovery information. The Pennsylvania Rules of Civil Procedure, like Washington's rules regarding civil procedure analyzed by the Supreme Court in *Seattle Times,* permit discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending action. Pa.R.Civ.P. 4003.1. Again, as is the case with the Washington rules, the Pennsylvania rules do not limit discovery to admissible trial information, but rather, allow for the discovery of information inadmissible at trial, provided that the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." Pa.R.Civ.P. 4003.1. Furthermore, discovery practices in Pennsylvania fit into the generalizations drawn by the Supreme Court in *Seattle Times.* Discovery in Pennsylvania rarely takes place in public. Depositions are usually scheduled in private quarters, at times and places most convenient for those involved. Interrogatories are also privately answered. Thus, the privacy concerns regarding the scope and manner of discovery articulated by the Supreme Court in *Seattle Times* are clearly present at bar.

Here, the discovered information to which The Morning Call seeks access contains intimate, personal details of the Stengers' lives. Encompassed therein is information about their sexual practices, their idiosyncrasies, and their personal hygiene habits. *See* Brief of Appellees, William, Donna, Craig, and Barry Stenger, page 11. This information elicited from the Stengers must only be reasonably calculated to lead to the discovery of admissible evidence; thus, such

trial discovery. *See In re Alexander Grant and Company,* 820 F.2d 352 (11th Cir.1987); *Anderson v. Cryovac, Inc.,* 805 F.2d 1 (1st Cir.1986); *Oklahoma Hospital Association v. Oklahoma Publishing Company,* 748 F.2d 1421 (10th Cir.1985). These courts, and others, have adopted the standards articulated by *Seattle Times* for determining whether pretrial protective orders are violative of the First Amendment. *See Shenandoah Publishing House, Inc. v. Fanning,* 235 Va. 253, 368 S.E.2d 253 (1988).

information may not even meet the standards for admissibility at trial. Furthermore, the parties may settle the litigation before trial even begins; thus, none of this intensely private information would be subject to public scrutiny at a trial.

If the parties do proceed to trial, The Morning Call would clearly have access to publish the evidence admitted at trial. The fact that The Morning Call is not a party to the litigation, unlike the petitioner in *Seattle Times*, serves to vitiate The Morning Call's claim even further. Here, *all* of the parties to the lawsuit, not just the Stengers, have supported the protective order issued by President Judge Backenstoe.

Moreover, as was the situation in *Seattle Times*, the trial court here relied upon a rule of civil procedure that allows the court, in its discretion, to implement a protective order to save a party from unreasonable embarrassment, annoyance or burden. Pa.R.Civ.P. 4012. There is no doubt that the contraction of the deadly AIDS virus has caused the Stengers unbearable misery. Certainly, the publication of their affliction in various newspapers has exacerbated this misery. The publication by The Morning Call of additional intimate details of the Stengers' lives would needlessly add humiliation to their distress. Clearly, good cause, as required by Pa.R.Civ.P. 4012, the Pennsylvania counterpart to Washington Rule 26(c), existed for the protective order.

Finally, the protective order at bar was narrowly tailored to apply exclusively to information communicated in the discovery process. The Morning Call has not been precluded from publishing information about the Stengers obtained from independent research. It has access to judicial records, as that term has been defined by judges, not newspapers, and it is free to publish the fruits of this access. If the parties proceed to trial, The Morning Call can also publish all information garnered at that proceeding.

Accordingly, we hold, as did the Supreme Court in *Seattle Times*, that a protective order prohibiting dissemi-

nation of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny. *Seattle Times*, 467 U.S. at 33, 104 S.Ct. at 2208. As stated by the *Seattle Times* Court, the scope of discoverable information is broad and there is a resultant potential for abuse in the discovery process. Thus, we wholly embrace the conclusion of the Supreme Court of the United States that "the trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times*, 467 U.S. at 36, 104 S.Ct. at 2209. In the case at bar, because the distinguished trial judge had good cause to fashion the protective order, because the order drawn is limited to the context of pretrial discovery, and because the order does not restrict the Morning Call from gaining the same information from other sources, we find that the protective order was not a violation of The Morning Call's First Amendment rights.

## II. COMMON LAW

■ The Morning Call also argues that it has a common law right of access to the discovery documents at bar. The Morning Call denominates this discovery information "judicial records." Brief for appellant at 9. We find that the discovery documents at issue are not judicial records, and that The Morning Call has no common law right of access to inspect this information.

■ There is a long-standing presumption in the common law that the public may inspect and copy judicial records and public documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Bank of America National Trust v. Hotel Rittenhouse*, 800 F.2d 339 (3d Cir.1986); *see also Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414 (1987). The public has a presumptive right of access to trial transcripts and transcripts of sidebar or chambers conferences. *Unit-*

*ed States v. Smith,* 787 F.2d 111 (3d Cir.1986). The presumption extends to documents which have been filed with the court, such as pleadings, arrest warrant affidavits, and settlement agreements, and which are considered public records. *See Fenstermaker,* 515 Pa. at 513–514, 530 A.2d 414, *Bank of America National Trust,* 800 F.2d at 342–343; *In re Alexander Grant and Company Litigation,* 820 F.2d 352 (11th Cir.1987).

■ However, private documents collected during discovery are not judicial records. *In re Alexander Grant and Company,* 820 F.2d at 355; *Anderson v. Cryovac, Inc.,* 805 F.2d 1 (1st Cir.1986); *see also Seattle Times v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). For the reasons articulated in the constitutional section of this opinion, discovery is essentially a private process. As stated by the Supreme Court in *Seattle Times,* "pretrial depositions and interrogatories are not public components of a civil trial." *Seattle Times,* 467 U.S. at 33, 104 S.Ct. at 2207. Thus, wrote the Court, "such proceedings were not open to the public at common law." *Id.* Justice Burger wrote separately in another Supreme Court opinion that "it has never occurred to anyone, so far as I am aware, that a pretrial deposition or pretrial interrogatories were other than wholly private to the litigants." *Gannett Company v. DePasquale,* 443 U.S. 368, 396, 99 S.Ct. 2898, 2914, 61 L.Ed.2d 608, 632 (1979). Accordingly, in the case at bar, The Morning Call does not have a common law right of access to discovered information.

Furthermore, we believe, as did the learned trial judge, that if a common law right of access is found here, and discovery information were to be readily available to the public, the detrimental consequences to the discovery process would be grievous. As a result, the entire litigation procedure would suffer. The trial court incisively and cogently stated:

[w]e believe that nonparty access to discovery materials may have a chilling effect upon potential litigants. Human nature dictates that an individual will be reluctant to

pursue his legal rights once he is aware that doing so will result in the exposure of his private life. This intrusion into a litigant's private affairs at the discovery or pretrial stage could be a deterrent to the utilization of the court system ... Further, as is evident in the present matter, nonparty access in controversial cases threatens the right of the litigants to a fair trial. It is essential that the court ensure this right by preventing an unfair presentation, prior to trial, of the facts and issues underlying a controversy.

Trial Court Opinion at 12. Not only would voluntary discovery be chilled, but whatever discovery that did take place would be almost exclusively oral. This is obviously undesirable because oral discovery would foster misunderstanding and a lack of clarity for the litigants and for the trial court.

Accordingly, after a consideration of the merits of The Morning Call's appeal, we find that The Morning Call was not entitled to the relief which it requested and, thus, the trial court did not abuse its discretion in denying the petition for intervention. Under the reasoning of *Frey's Estate*, 237 Pa. 269, 85 A. 147 (1912), and its progeny, we quash the appeal.

APPEAL QUASHED.

WIEAND, J., dissents.

WIEAND, Justice, dissenting:

I respectfully dissent from the decision of the majority to quash this appeal. In my best judgment, it would be more realistic to affirm the order of the trial court.

In this action to recover damages for the alleged contraction of Acquired Immune Deficiency Syndrome (AIDS) by blood transfusion, the trial court directed that discovery proceedings should be closed to the press and public. The Morning Call, an Allentown newspaper, filed a petition to intervene in the action for the purpose of challenging its exclusion from pre-trial discovery proceedings. The trial

court, after due consideration, denied the petition to intervene. In my judgment, the decision of the trial court was correct. The Morning Call did not have an absolute right of access to the pre-trial discovery proceedings. See: *Seattle Times Company v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Moreover, its common law right to inspect court records was subject to the supervisory powers of the trial court, which could exclude the public and the media from pre-trial discovery proceedings to protect the private rights of the parties. Cf. *Katz v. Katz*, 356 Pa.Super. 461, 514 A.2d 1374 (1986), *appeal denied*, 515 Pa. 581, 527 A.2d 542 (1987). Therefore, I would affirm the order of the trial court.

In *Frey's Estate*, 237 Pa. 269, 85 A. 147 (1912), the Supreme Court said:

> While, as a rule, an appeal will not lie from an order refusing leave to intervene, because such an order is not a final one, cases may arise where a denial of a petition to intervene would be a practical denial of relief to which the petitioner for intervention is entitled and can obtain in no other way; and in such cases the refusal to permit an intervention is a final order or decree as to the petitioner.

*Id.*, 237 Pa. at 271, 85 A. at 148 (citations omitted). The majority, in reliance upon *Frey's Estate*, examines the merits of the petition to intervene, determines that The Morning Call was not entitled to the relief sought, and holds, therefore, that an appeal will not lie from the order of the trial court which denied intervention. This reasoning is circuitous. Nevertheless, it has been followed by the Superior Court in the following cases: *Inryco, Inc. v. Helmark Steel, Inc.*, 305 Pa.Super. 239, 451 A.2d 511 (1982); *Boise Cascade Corp. v. East Stroudsburg Savings Association*, 300 Pa.Super. 279, 446 A.2d 614 (1982); *Richard Held Builders, Inc. v. A.G. Allebach, Inc.*, 266 Pa.Super. 101, 403 A.2d 113 (1979); *Taub v. Merriam*, 251 Pa.Super. 572, 380 A.2d 1245 (1977). As we shall see, however, the Supreme Court has itself cast doubt on the continuing validity of this rule by dictum in *Capital Cities Media, Inc. v. Toole*, 506

Pa. 12, 483 A.2d 1339 (1984). In my best judgment, this old rule is unrealistic and can serve only to confound. It has been widely criticized and was disapproved and rejected by the Third Circuit Court of Appeals in *Commonwealth v. Rizzo*, 530 F.2d 501 (3d Cir.1976), *cert. denied, Fire Officers Union v. Pennsylvania*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). After discussing the old rule, identical to that stated in *Frey's Estate, supra*, which had theretofore been followed by the Third Circuit, the Court said:

> We do not follow the older rule which made appealability turn on whether the appellant had, in fact, a right to intervene. "Since [such a rule] makes appealability turn on the merits, it is not a very effective or useful limitation of appellate jurisdiction; the propriety of the denial by the district judge must be examined before the appellate court knows whether it has jurisdiction, and the only consequence of the restriction on appealability is that on finding the district judge was right, it will dismiss the appeal rather than affirm." *Levin v. Ruby Trading Corp.*, 333 F.2d 592, 594 (2d Cir.1964) (Friendly, J.) (quoted in 7A C. Wright & A. Miller, Federal Practice and Procedure § 1923, at 627 (1972)). It is sufficient that intervention of right was sought and denied to render the denial appealable.

*Commonwealth v. Rizzo, supra* at 504. See also: 3B Moore's Federal Practice 24.15, at 564–565 (2d ed. 1976); Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators*, 81 Harv.L.Rev. 721, 748–751 (1968), cited in *Boise Cascade Corporation v. East Stroudsburg Savings Association, supra* 300 Pa.Super. at 282 n. 1, 446 A.2d at 615 n. 1.

Generally, an appeal will lie only from a final order, i.e., one that ends the litigation or disposes of the entire case, unless an appeal is otherwise permitted by statute. *Pugar v. Greco*, 483 Pa. 68, 72–73, 394 A.2d 542, 544–545 (1978). See also: *Piltzer v. Independence Federal Savings and Loan Association*, 456 Pa. 402, 319 A.2d 677 (1974). In *Cohen v. Beneficial Industrial Loan Corporation*, 337

U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), however, the Supreme Court of the United States carved out an exception to the final judgment rule for situations in which postponement of an appeal until after entry of final judgment might result in the irreparable loss of the right asserted. This exception has been adopted and followed in Pennsylvania. See: *Pugar v. Greco, supra; Gray v. State Farm Insurance Co.,* 328 Pa.Super. 532, 477 A.2d 868 (1984); *Veno v. Meredith,* 295 Pa.Super. 419, 441 A.2d 1302 (1982). Under *Cohen,* an appeal will lie from an order that will not terminate the litigation where three requirements are met: (1) the order appealed is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) if review of the question presented is postponed until final judgment, the claimed right will be irreparably lost. *Cohen v. Beneficial Industrial Loan Corporation, supra* 337 U.S. at 546, 69 S.Ct. at 1226, 93 L.Ed. at 1536.

The instant case involves a newspaper's right to intervene in an action to challenge a court order closing judicial proceedings to the press and public. The order is clearly separate from and collateral to the principal cause of action. It also involves a right too important to be denied review, for it pertains to the right of the news media to be accorded access to pre-trial discovery proceedings in a civil action charging a major medical center with negligence in allowing the AIDS virus to be communicated by blood transfusion. Cf. *Capital Cities Media, Inc. v. Toole, supra* 506 Pa. at 22, 483 A.2d at 1344 ("We recognize the legitimacy and importance of the interest of the news media in judicial proceedings."). Finally, because of the ephemeral nature of the news media's alleged right to publish, our courts have been sensitive to the need to allow expeditious appeals. *Id.* Indeed, in the instant case, a later appeal, after the entire case has been resolved, will be of little practical value to appellant. I would hold, therefore, that the order denying intervention in the instant case is immediately appealable.

The Pennsylvania Supreme Court has specifically directed the procedure to be used by the media in situations such as this. In *Capital Cities Media, Inc. v. Toole, supra,* a newspaper had petitioned for a writ of prohibition which would have had the effect of barring enforcement of a court order restraining the media from printing or announcing names or addresses of jurors and from taping, sketching or photographing jurors in a criminal case. In upholding the trial court's denial of the writ on procedural grounds, the Court said:

> The first step in this procedure would have been for the applicants to petition the trial court to intervene for the purpose of challenging the legality of the pre-trial orders. *See, e.g., Commonwealth v. Hayes,* [489 Pa. 419, 414 A.2d 318, *cert. denied,* 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980) ]. Such an action is in accordance with our well-established and strongly held view that it is essential to meaningful judicial review that objections should be addressed to the court of first instance to permit that court to evaluate such claims and to have the opportunity to correct its own errors. This practice creates a record from which the grounds of the lower court's determination may be readily discerned in the event review by an appellate court becomes necessary. *An order denying leave to intervene in these sensitive circumstances is immediately appealable. See Frey's Estate,* 237 Pa. 269, 85 A. 147 (1912); *see generally Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542 (1978); *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975).

*Id.* 506 Pa. at 22–23, 483 A.2d at 1344 (emphasis added) (citations omitted). Thus, the Supreme Court has not only defined the procedure to be followed by the media, but has declared that a denial of a right to intervene is immediately appealable.

The procedure followed by The Morning Call in the instant case adhered to that prescribed by the Supreme Court in the *Capital Cities Media* case. When the trial court

denied the petition for intervention, its order, I would hold, was immediately appealable under the *Cohen* collateral order rule. See: *Capital Cities Media, Inc. v. Toole, supra; Katz v. Katz, supra.* Therefore, I would not quash this appeal. Instead, I would affirm the order of the trial court. The access of the media to pre-trial discovery proceedings in a civil action, as the majority has discerned, is subject to reasonable control by the court in which the action is pending.