514 A.2d 1374

**Barbara KATZ, Appellee,**

v.

**Harold KATZ, Appellant.**

**Barbara KATZ, Appellant,**

v.

**Harold KATZ, Appellee.   (Four Cases)**

Superior Court of Pennsylvania.

Argued March 12, 1986.

Filed Aug. 19, 1986.

Reargument Denied Sept. 30, 1986.

Theodore R. Mann, Philadelphia, for appellant in No. 1457 and for appellee in Nos. 1730–1733.

David Hoffstein, Philadelphia, for appellant in Nos. 1730–1733 and for appellee in No. 1457.

Before WICKERSHAM, WIEAND and POPOVICH, JJ.

WIEAND, Judge:

The principal issue in this appeal is whether divorce hearings pertaining to equitable distribution of marital property may be closed to the public. This is an issue of first impression and involves conflicting interests. The trial court concluded that it had been divested of discretion by the decision of the Court of Appeals of the Third Circuit in *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059 (3d Cir.1984) and ordered that the hearings be held in an open courtroom accessible to the public. We reverse and remand to permit the trial court to determine whether good cause exists for closing the hearings.

Harold Katz and Barbara Katz were married on August 27, 1974. No children were born of this union, but each

party had three minor children by a prior marriage. During the early years of their marriage, the parties enjoyed a comfortable, middle-class lifestyle. Although Harold had been involved in a weight loss business prior to the marriage, after marriage the nature of the business changed and became Nutri/System, Inc., which has developed into a multi-million dollar corporation. The modest lifestyle of the couple changed as well. Harold and Barbara entertained often and lavishly, traveled extensively, and purchased a thirty-five room mansion, maintained by a full-time domestic staff. Their annual income rose from approximately $25,000 in 1974 to more than five million dollars in 1981. In that year the parties separated. It was after their separation that Harold purchased the Philadelphia 76ers Basketball Club, Inc.

On April 6, 1981, Barbara instituted an action for divorce, asserting, as well, claims for economic relief. Hearings on the equitable distribution claim were scheduled to begin on February 4, 1985. Prior to commencement of the hearings, Barbara requested that the equitable distribution hearings be held in open court. Harold objected to his wife's request. During an in-chambers conference the trial court ruled that the hearings would be closed. Philadelphia Newspapers, Inc. (P.N.I.) then filed an appeal to this Court, challenging the closure order. The Honorable Phyllis W. Beck, motions court judge, directed that an immediate hearing be held before the trial court on the closure issue. At that hearing Katz advanced three reasons for closing the equitable distribution hearings. The trial court, as we have observed, felt constrained by *Publicker Industries, Inc. v. Cohen, supra,* to hold that the media had a right of access to the equitable distribution hearings. Therefore, the court entered an order on May 7, 1985, which directed that all future hearings in the divorce action be held in an open courtroom. Katz appealed.

In the meantime, Katz had filed a petition to bifurcate the request for divorce from the economic claims. The motion was granted, after hearing, on May 30, 1985, and a decree

in divorce was entered on May 31, 1985. Barbara has filed appeals from the order granting bifurcation, from the denial of exceptions thereto, from the decree of divorce and from an order denying exceptions to the decree in divorce. All such appeals have been consolidated for purposes of review.

Before considering Katz's appeal from the trial court's order directing that equitable distribution hearings be conducted in open court, we must determine the appealability of such an order. "The question of the appealability of an order goes to the jurisdiction of the Court requested to entertain the question.... Questions relating to jurisdiction are not waived by the failure of the parties to raise them, and may properly be raised by the court *sua sponte*." *Fried v. Fried*, 509 Pa. 89, 92, 501 A.2d 211, 212 (1985) (citations and footnote omitted).

"[A]n appeal will lie only from a final order unless otherwise permitted by statute or rule." *Id.*, 509 Pa. at 93, 501 A.2d at 213; *Beasley v. Beasley*, 348 Pa.Super. 124, 126, 501 A.2d 679, 679 (1985). A final order is one which either ends the litigation or disposes of the entire case. *Pugar v. Greco*, 483 Pa. 68, 73, 394 A.2d 542, 544–545 (1978). "Whether an order is final and appealable cannot necessarily be ascertained from the face of a decree alone, nor simply from the technical. effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications." *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 228, 348 A.2d 734, 735 (1975); *Beasley v. Beasley, supra.* See also: *Praisner v. Stocker*, 313 Pa.Super. 332, 337, 459 A.2d 1255, 1258 (1983). An order directing that the trial of equitable distribution claims remain open to the public and press is obviously not a final order. Neither party is put out of court, and the order does not determine or end the economic claims. Cf. *Beasley v. Beasley, supra*, 509 Pa. at 126, 501 A.2d at 680.

This, however, does not end our inquiry. The courts of Pennsylvania have adopted and followed the rule an-

nounced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), which recognizes an exception to the final judgment rule. *Fried v. Fried, supra* 509 Pa. at 94, 501 A.2d at 214; *Pugar v. Greco, supra* 483 Pa. at 73, 394 A.2d at 545; *Beasley v. Beasley, supra; Praisner v. Stocker, supra* 313 Pa.Super. at 342, 459 A.2d at 1260–1261.

> Under *Cohen,* an order which is separable from and collateral to a cause of action may become appealable under certain circumstances. Those circumstances, all of which must be present, are as follows: "[the order is] separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corporation, supra,* 337 U.S. at 546, 69 S.Ct. at 1225–1226, 93 L.Ed.2d at 1536. See also: *Pugar v. Greco, supra; Bell v. Beneficial Consumer Discount Company, supra,* 465 Pa. at 228–229, 348 A.2d at 736; *Praisner v. Stocker, supra.*

*Beasley v. Beasley, supra.*

An order relating to the public or private nature of equitable distribution hearings is separable from and collateral to the main action for equitable distribution. *C. v. C.,* 320 A.2d 717, 720 (Del.1974). The right alleged, i.e., the privacy to be afforded equitable distribution hearings, is too important to be denied review because the right, if there is one, is central to the manner in which the hearings will proceed. "The third factor requires a finding that the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. The corollary is that a claimed right which can be compensated through the final judgment is one that is not irreparably lost." *Fried v. Fried, supra.* If review of the present order is postponed until after the final order of equitable distribution has been made, any information obtained from the hearings and made public will not be subject to recall, and the claimed right of privacy will have

been lost. Moreover, it will not be possible to fashion a decree of equitable distribution which will compensate Katz for the harm, if any, which will be caused by a disclosure of his marital and financial circumstances. We conclude, therefore, that the order directing public hearings is appealable as a collateral order under *Cohen v. Beneficial Industrial Loan Corp., supra.*

Generally speaking, trials in courts of justice must be conducted in public. See: 75 Am.Jur.2d *Trial* § 33 (1974). The openness of proceedings has generally been raised in the context of criminal trials, and with respect thereto the courts have recognized both a common law and constitutional right of public access. See: *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973, 991–992 (1980); *Commonwealth v. Contakos,* 499 Pa. 340, 343–345, 453 A.2d 578, 579–580 (1982); *Commonwealth v. Hayes,* 489 Pa. 419, 426–427, 414 A.2d 318, 321 (1980).

"The requirement of public civil trials, though not an enumerated or even a penumbral constitutional guarantee, is nevertheless as old as the guarantee in criminal proceedings." Comment, *All Courts Shall Be Open: The Public's Right to View Judicial Proceedings and Records,* 52 Temple L.Q. 311, 311 (1979) (footnote omitted). Until recently, it was clear that the right of access to civil proceedings was a common law right and did not rest upon judicial interpretation of the First Amendment guarantee of freedom of the press. The First Amendment, it was held, did not confer upon the media a right of access to civil trials greater than the right of access enjoyed by the general public. This view was articulated by the United States Supreme Court as follows: " 'Once beyond the confines of the courthouse, a newsgathering agency may publicize, within wide limits, what its representatives have heard and seen in the courtroom. But the line is drawn at the courthouse door; and within, a reporter's constitutional rights are no greater than those of any members of the public.' " *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 609, 98 S.Ct. 1306,

1318, 55 L.Ed.2d 570, 587 (1978), quoting *Estes v. Texas*, 381 U.S. 532, 589, 85 S.Ct. 1628, 1663, 14 L.Ed.2d 543, 584 (1965) (Harlan, J., concurring). See also: *United States v. Criden*, 648 F.2d 814 (3d Cir.1981).

The common law rule, which also confers a public right of access to court records, is that every person is entitled to access "provided he has an interest therein for some useful purposes and not for mere curiosity." *C. v. C.*, *supra* at 723; 24 Am.Jur.2d *Divorce and Separation* § 341, at 410 (1983). This common law right of access, of course, is not absolute. *In re National Broadcasting Co.*, 653 F.2d 609, 613 (D.C.Cir.1981). Every court has supervisory powers over civil proceedings in progress before it and may deny access where such access may become a vehicle for harmful or improper purposes. See: *Nixon v. Warner Communications, Inc.*, *supra* 435 U.S. at 598, 98 S.Ct. at 1312, 55 L.Ed.2d at 580. Thus, the public may be "excluded, temporarily or permanently, from court proceedings or the records of court proceedings to protect private as well as public interests: to protect trade secrets, or the privacy and reputations [of innocent parties], as well as to guard against risks to national security interests, and to minimize the danger of an unfair trial by adverse publicity." *In re National Broadcasting Co.*, *supra* at 613. "These are not necessarily the only situations in which public access ... can properly be denied. A bright line test has yet to be formulated. Meanwhile, the decision as to public access must rest in the sound discretion of the trial court." *Commonwealth v. Frattarola*, 336 Pa.Super. 411, 426, 485 A.2d 1147, 1155 (1984) (Wieand, J., concurring).

This is also the present state of the common law right of access to civil proceedings in Pennsylvania. The Rules of Civil Procedure grant discretion to a trial court to exclude the public from civil proceedings in the interest of "public good, order or morals." Pa.R.C.P. 223(a)(4).[1] The Divorce

---

1. Pa.R.C.P. 223 provides specifically as follows:

Code [2] seems to confirm by implication the discretionary right of a trial court to close divorce hearings. Section 305(a) [3] permits a party, after service of the divorce complaint, to request a jury trial on "any matter of fact that is affirmed by one and denied by the other" by directing a rule to show cause to the opposite party. Section 305(b) permits the trial judge in his or her discretion to discharge or make the rule absolute. However, "such rule shall not be made absolute when, in the opinion of the court, a trial by jury cannot be had without prejudice to the public morals." *Id.* The Divorce Code does not otherwise address whether divorce hearings may be closed or whether they must, in all events, remain open to the public. Our research has disclosed no appellate court decision which has applied Pa.R.C.P. 223(a)(4) or the provisions of the Divorce Code to determine under what circumstances a court may exclude the public from hearings in an action for divorce.

However, the Supreme Court of Rhode Island, in a pre-twentieth century decision, discussed this qualified, common law right of access in the context of domestic relations cases as follows:

[I]t is clearly within the rule to hold that no one has a right to examine or obtain copies of public records from mere curiosity, or for the purpose of creating public scandal. To publish broadcast [sic] the painful, and sometimes disgusting, details of a divorce case, not only fails to serve any useful purpose in the community, but, on the other hand, directly tends to the demoralization and corruption thereof, by catering to a morbid craving for that which is sensational and impure. The judicial records of

(a) Subject to the requirements of due process of law and of the constitutional rights of the parties, the court may make and enforce rules and orders covering any of the following matters, inter alia:

. . . .

(4) Regulating or excluding the public or persons not interested in the proceedings whenever the court deems such regulation or exclusion to be in the interest of the public good, order or morals.

2. Act of April 2, 1980, P.L. 63, No. 26, § 101, 23 P.S. § 101 et seq.

3. 23 P.S. § 305(a).

the state should always be accessible to the people for all proper purposes, under reasonable restrictions as to the time and mode of examining the same; but they should not be used to gratify private spite or promote public scandal. And, in the absence of any statute regulating this matter, there can be no doubt as to the power of the court to prevent such improper use of its records. *In re Caswell*, 18 R.I. 835, 836, 29 A. 259, 259 (1893). Whether divorce hearings are required to be open to the public was also considered by the Supreme Court of Delaware. In *C. v. C., supra,* the Court held that a statutory provision at 13 Del.C. § 1506, which provided that "[n]o record or evidence in any case shall be impounded or access thereto refused," was not intended as a public access statute applicable to actions of divorce but was designed rather to guarantee the litigants absolute access to the judicial file in their own divorce cases. The Court held that a trial court could properly seal a divorce file from access by the general public pursuant to the common law rule of qualified access to public records. *Id.* at 727. Under this rule, the public and the media have a right of access to divorce files if they can demonstrate a legitimate interest for some useful purpose. *Id.* The Delaware Court observed further that the state constitutional guarantee that "[a]ll courts shall be open ..." was not directed to the issue of public trial but rather derived from the Magna Carta provision that "We will sell to no man, we will not deny to any man, either justice or right." *Id.* at 728.[4]

**4.** In *State ex rel. Gore Newspapers Co. v. Tyson,* 313 So.2d 777 (Fla. Dist.Ct.App.1975), the District Court of Appeals of Florida entertained a request for and granted a writ of prohibition preventing a trial judge from conducting a closed trial in a divorce action pending between Jackie and Beverly Gleason. However, *Tyson* was overruled in *English v. McCrary,* 348 So.2d 293 (Fla.1977). *Tyson,* therefore, is noteworthy only for the concerns raised therein. The Court held that a trial court could exclude the public and press in furtherance of the litigants' right to a fair trial only upon a showing of "cogent reasons" for the closure. *Tyson, supra* at 782. Because the Gleasons had advanced no theory upon which it could be argued that they would not be afforded a fair trial if the public and press were present or that

The United States Supreme Court, as we have observed, has not held that the First Amendment freedom of the press guarantee establishes a constitutional right of media access to civil trials. See: *Richmond Newspapers, Inc. v. Virginia, supra* 448 U.S. at 580 n. 17, 100 S.Ct. at 2829 n. 17, 65 L.Ed.2d at 992 n. 17 (Plurality Opinion); *Globe Newspaper Co. v. Superior Court for the County of Norfolk,* 457 U.S. 596, 611, 102 S.Ct. 2613, 2622, 73 L.Ed.2d 248, 260 (1982) (O'Connor, J., concurring). More recently, although recognizing that it was acting without prior Supreme Court precedent, the Court of Appeals for the Third Circuit, in *Publicker Industries, Inc. v. Cohen, supra,* held "that the 'First Amendment embraces a right of access to [civil] trials ... to ensure that this constitutionally protected "discussion of governmental affairs" is an informed one.'" *Id.* at 1070, quoting *Globe Newspaper Co. v. Superior Court for the County of Norfolk, supra* 457 U.S. at 604–605, 102 S.Ct. at 2619, 73 L.Ed.2d at 256 (discussing criminal trials). The Court added, "[a]lthough the right of access to civil trials is not absolute, nevertheless, as a First Amendment right it is to be accorded due process protection that other fundamental rights enjoy." *Id.* The Court concluded, therefore, that there is a presumption in favor of openness. Consequently, a party seeking closure has the burden of showing that the proceedings will involve material of the type which courts will protect and that there is good cause for closure. "Good cause," the Court said, "is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* at 1071, citing *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 529 F.Supp. 866, 891 (E.D.Pa.1981). The Court of Appeals held, finally, that the trial court had "abused its discretion by closing [an injunction hearing] without explaining its reasons." *Id.* at 1072.

The decisions from jurisdictions outside Pennsylvania which have applied the common law right of access to

the administration of justice would be furthered by exclusion, the trial court could not properly close the proceedings.

divorce proceedings suggest that divorce proceedings are the type of proceedings which have received protection against public scrutiny because the details thereof involve matters which are essentially private in nature and which lack any useful, public purpose. Trials of divorce issues frequently involve painful recollections of a failed marriage, details of marital indiscretions, emotional accusations, and testimony which, if published, could serve only to embarrass and humiliate the litigants. While the public has a right to know that its courts of justice are fairly carrying out their judicial functions, no legitimate purpose can be served by broadcasting the intimate details of a soured marital relationship. Similarly, the public can have little, if any, legitimate interest in the identification, evaluation and distribution of private property which the marriage partners have accumulated while they lived together and cohabited. Merely because marital property has been accumulated because of the financial successes achieved by an astute businessman does not alone justify opening equitable distribution hearings to the public. Cf. *C. v. C.*, *supra* at 729 ("the mere fact that a divorce litigant is a public official does not in itself necessarily justify the public disclosure of the intimate details of his marital history. On the other hand, if the evidence in a divorce case relates to a litigant's activities in his public capacity, that may well be an appropriate ground for the exercise of discretion and the grant of access [to the record], in whole or in part, to the press.").

We hold, therefore, that divorce hearings are the type of proceedings which courts may close to protect the rights of the parties. The discretion of the court to close a divorce hearing, however, is not absolute. "Good cause" must be established before proceedings can be closed. What constitutes "good cause" may well depend upon whether the right of access is ultimately determined to be a common law right or a right guaranteed by the First Amendment. For present purposes, however, we will adopt and apply the standard articulated in *Publicker Industries* that closure is warranted where "disclosure will work a

clearly defined and serious injury to the party seeking closure."

Katz asserted several interests which he contended would be injured if the public were to be granted access to hearings being held to identify and distribute marital property. These included: (1) the right to have his personal life and family matters remain private; (2) the danger of harassment or physical injury if his property and financial holdings were made public; (3) the right to nondisclosure of his income tax returns; and (4) the danger that potential investors in Nutri/Systems, Inc. would be misled to their detriment by testimony attempting to place a value on the corporate stock. The trial judge did not make specific findings of fact, but the opinion which he wrote implies that he was willing to accept as valid at least the first two concerns.

With respect to the first reason for closure, the trial court said:

> In contrast, Defendant's complaint that his private life should not be bandied about in public is certainly legitimate. The United States Supreme Court has held that the right of marital privacy is within the penumbra of the specific guarantees of the Bill of Rights. *Griswold v. Connecticut*, 381 U.S. 479 [85 S.Ct. 1678, 14 L.Ed.2d 510], 1965. Defendant is entitled to protection from the prying eyes of the public in terms of what goes on in his own home.[5]

Trial Court opinion at 4.

With respect to the second reason advanced by Katz for closure, the trial court said:

**5.** In determining the existence of a constitutional right of marital privacy and writing for the Court in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), Mr. Justice Douglass said:

> We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social

Defendant averred that continued discussion of his wealth would endanger his family. The Court sympathizes with Defendant on this point. While Defendant, as owner of the Philadelphia 76ers, a professional basketball team, and the visible head of a successful corporation, is in a very real sense a public figure, he need not be exposed more than is necessary to the less enviable features which accompany that public status. The more publicity Defendant receives in the setting of this action, the more likely it becomes that he and his family will be subjected to some form of harassment. This should not be.

Trial Court opinion at 5–6.

Despite the fact that the trial judge appears to have concluded that these two reasons warranted a closing of the hearings, he ordered that public hearings be held in an open courtroom because he was of the opinion that the *Publicker Industries* decision had divested him of discretion. This, we conclude, was an incorrect reading of *Publicker Industries.* As we have seen, the *Publicker Industries* Court reversed an order closing a preliminary injunction hearing because the trial court had failed to give reasons for its order. The Court did not otherwise command that all civil proceedings must invariably be open to the public.

We hold, therefore, that the trial court erred when it concluded that it had been divested of discretion and could not exclude the public from the equitable distribution hearings. Both the decision in *Publicker Industries* and Pa.R.C.P. 223(a)(4) direct that the trial court determine whether there is good cause for excluding the public from civil proceedings. This determination must necessarily depend upon the exercise of the trial court's discretion, which will not be reversed absent an abuse thereof. So that its order may be reviewed on appeal, however, the trial court must state its reasons for the action which it takes.

projects. Yet it is an association for as noble a purpose as any involved in our prior decisions.

*Id.* at 486, 85 S.Ct. at 1682, 14 L.Ed.2d at 516.

In the instant case, the trial judge's opinion leaves us with the impression that, if he were given discretion, he would exclude the public from the equitable distribution hearings in this divorce action. Because he has not expressly said so and also because he has made no specific findings, however, we cannot be certain. Therefore, we find it necessary to remand so that the trial court may exercise its discretion by entering an appropriate order, together with reasons therefor, consistently with the foregoing opinion.

■ We turn next to the several appeals filed by Barbara Katz, all of which are directed to the alleged impropriety of the trial court's entry of a bifurcated decree in divorce. "[W]e will review [trial] court decisions pertaining to bifurcation by using an abuse of discretion standard. So long as the trial judge assembles adequate information, thoughtfully studies the information, and then explains his decision regarding bifurcation, we defer to his discretion." *Wolk v. Wolk*, 318 Pa.Super. 311, 318, 464 A.2d 1359, 1362 (1983). In *Wolk*, our Court required that the trial judge examine both advantages and disadvantages of bifurcation before determining in each case whether bifurcation was appropriate.

The trial court, in determining that bifurcation was proper in the instant case, relied upon the following:

When the parties separated, the plaintiff received a car, a large amount of jewelry, a plethora of household furnishings, art works, a substantial lump sum from the sale of some bonds, plus an additional sum of $350,000.00, specifically for the purpose of purchasing a house. She also received other items not here enumerated. Currently, Plaintiff lives in a penthouse condominium in THE Philadelphian, she receives Seven Thousand ($7,000.00) Dollars per month, tax free alimony, she is covered by adequate health insurance, and is protected by an agreement for a Four Million ($4,000,000.00) Dollar fund, and by testimony of the Defendant in Open Court under oath, that should he die before equitable distribution is complet-

ed, the Dead Man's Rule is to be waived, and as far as the Defendant's assets are concerned, Plaintiff is to maintain the identical position she held at the Petition to Bifurcate Hearing held on May 29, 1985. It would therefore appear that the Plaintiff has not been prejudiced in any manner.

Trial Court opinion at 2. The facts in this case, therefore, were vastly different than the sparse testimony and bare conclusions which this Court found inadequate in *Mandia v. Mandia*, 341 Pa.Super. 116, 491 A.2d 177 (1985), and *Hall v. Hall*, 333 Pa.Super. 483, 482 A.2d 974 (1984). In the present case, the trial judge had presided over the litigation following its inception in 1981 and was familiar with the background and circumstances of the parties. The bifurcation hearing, moreover, produced a wealth of evidence. The parties had restructured their private lives following separation and had even filed separate income tax returns after 1981. The testimony revealed that Katz had given his wife $350,000 to purchase a new home and that after June of 1982 he had made and was continuing to make monthly payments of $7,000 as support. These payments were to continue by agreement until equitable distribution was decreed. Significant testimony was also received regarding Katz's financial status, his holdings, and his net worth. The court observed that a four million dollar fund, consisting of various securities, had been set aside and was being held pursuant to Barbara's petition for special relief under sections 401(c) and 403(a) of the Code. The court emphasized the fact that the two had lived separate and apart for more than three years and that the marriage was irretrievably broken. Katz is living with another woman and has fathered a child with her. Therefore, the trial court did not abuse its discretion by concluding that the parties should be divorced. Should Katz die before entry of an order decreeing equitable distribution, this Court has held, the action for equitable distribution will not abate and may thereafter be concluded. *Pastuszek v. Pastuszek*, 346 Pa.Super. 416, 423, 499 A.2d 1069, 1072–1073 (1985).

The decree of divorce is affirmed. The order denying appellant's request for closed hearings is reversed, and this issue is remanded to the trial court for the entry of an order consistent with the foregoing opinion. Jurisdiction is not retained.