## Weathers v. Lintzmeyer

*Francis P. Connors,* for plaintiff.
*David Auerbach,* for defendant.

BATTLE, *J.,* June 26, 1990 — This court entered an order dated January 25, 1990, allowing bifurcation in the divorce action at issue. Thereafter, a divorce decree was signed by the Honorable Harry Bradley on February 2, 1990.

Defendant argues that bifurcation should not have been granted.

Husband has moved for a divorce based upon a statutory three-year separation from wife. The parties were separated in May 1986. Wife maintains that a bifurcation is adverse to her best interest and would jeopardize her security.

The question of whether or not a bifurcation should be granted must be made by the court after careful examination of all the factors with regard to bifurcation and an analysis to whether a bifurcation would be prejudicial to one party or the other.

Moreover, the question of whether to grant bifurcation of a divorce action must be reviewed on its own facts and should not be made pro forma. The determination should be made after the trial judge

has examined both the advantages and disadvantages of bifurcation and determines that the consequences of bifurcating the case will be of greater benefit than not bifurcating. *Mosier v. Mosier,* 359 Pa. Super. 187, 518 A.2d 843 (1986).

This court initially notes that wife filed the complaint in divorce. At some point, when it was determined that pursuing said divorce would not be advantageous, wife opted not to further pursue this action. Consequently, upon the expiration of the statutory three-year waiting period, husband chose to pursue his entitlement to a divorce. In the interim period, husband has fathered two children and wishes to marry the mother of his children.

Since the separation in 1986, the parties have restructured their private lives and have filed separate tax returns for the last two years. In *Katz v. Katz,* 356 Pa. Super. 461, 514 A.2d 1374 (1986), the Superior Court held that the bifurcation was properly allowed where the parties had lived separate and apart for more than three years and the marriage was irretrievably broken. In *Katz,* the court also pointed out that the parties had restructured their private lives following separation, had filed separate income tax returns, and that the husband was living with another woman and had fathered a child with her.

In *Taylor v. Taylor,* 349 Pa. Super. 423, 503 A.2d 439 (1986), the court held that bifurcation was proper where the husband's purpose in seeking it was that he wished to remarry. In the *Taylor* case, the wife opposed bifurcation because she had medical problems and needed to rely on her husband's medical insurance; she would lose spousal support upon divorce and did not yet have a property settlement to rely upon; and lastly, non-bifurcation pro-

vided greater stability for her and her children. The court held that the disadvantages the wife alleged were not so overwhelming or of such magnitude to refuse bifurcation. The court reasoned that the entry of a divorce decree would not alter the wife's right to alimony pendente lite, and that bifurcation would be advantageous in that it would accelerate the dissolution of an irretrievably broken marriage, and thus, not hold the husband's personal life hostage to economic disputes. In the case of *Leese v. Leese,* 369 Pa. Super. 104, 534 A.2d 1101 (1987), the husband was 84 years old while the wife was only 56. In that case, the Superior Court held that the wife's belief that she would benefit financially by delaying a divorce decree, i.e., that she would acquire greater interest in the entireties real estate if her husband died prior to the divorce decree being granted, was an inadequate reason for refusing to enter a bifurcated decree. The court reasoned that a more equitable result would be achieved if a bifurcated decree was entered which vested the rights of the parties to a distributive share of the marital property; bifurcation would permit the parties to move forward with their lives without holding the personal life of an 84-year-old man hostage to the economic claims of a younger, undivorced wife.

Wife opposes the bifurcation of this divorce action and the entering of a divorce decree for several reasons. Wife contends that if the divorce decree were granted, there would be unnecessary delay in settling the equitable distribution of the marital assets. Wife also argues that if the divorce decree were granted, she would lose her medical insurance benefits. Lastly, wife argues that if a decree were granted, she would lose her rights to her husband's pension benefits.

This court is of the opinion that under applicable case law, wife has not presented any compelling reason why bifurcation should not be permitted. This court addresses wife's concerns seriatim.

As previously indicated, wife filed her action in divorce over three years ago and subsequently determined that it was not in her best interest to pursue the action further. It was after the three-year separation period had terminated that wife proceeded to comply with local rules and filed the necessary inventory and appraisement.

Once a divorce decree is entered in this matter, the parties can, without delay, proceed to equitable distribution. Wife would not be subject to any delay in settling the equitable distribution aspect of this case. Husband filed a motion for pretrial conference so that the matter could proceed to a hearing before the special master on the issues of equitable distribution. Accordingly, this court finds no merit to wife's contention that there would be any delay relative to equitable distribution.

Wife has indicated that the entering of a divorce decree would jeopardize her entitlement to medical insurance benefits. The various pleadings in this case, together with the memoranda filed by counsel, indicate that wife is a college graduate with a teaching degree and has some experience in the teaching field. However, during the parties' period of separation, wife has apparently not pursued any avenue of gainful employment.

Upon review of *Rueckert v. Rueckert,* 20 D.&C. 3d 191 (1981) and *Hoffman v. Hoffman,* 350 Pa. Super. 280, 504 A.2d 356 (1986), this court finds no reason to delay husband's statutory entitlement to a divorce since it was, in fact, wife who filed the initial divorce pleadings. Wife additionally argues that a

bifurcated decree would jeopardize her entitlement to her husband's pension. Under federal law, a husband's military pension can be divided into a portion for the husband and a portion for the wife. However, at the husband's death the pension ceases to exist and neither husband nor wife is entitled to their respective portion. The pension's survivor benefit clause allows the wife to obtain a benefit even after the husband dies. For this reason, it appears that wife is requesting the court to delay this divorce matter until husband's pension benefits vest. This court is not willing to carve out an exception for Mrs. Weathers. Many cases have come before the bench which require a qualified domestic relations order to be ordered because the parties' rights to pensions have not yet vested. The court has no control over the type of pension at issue. It is for this very reason that in order to protect non-vested pensions, the concept of a qualified domestic relations order was established. It is certainly unfortunate that the pension in this matter has not yet vested, but to delay a divorce decree until a pension is vested is wholly incongruous to the nature of divorce.

The parties have lived separate and apart for over three years and the marriage is clearly irretrievably broken. Husband has restructured his private life, has fathered two children, and wishes to marry the mother of his children. Bifurcation will not only allow these parties to avail themselves of equitable distribution procedures, it will also be beneficial for the welfare and stability of husband's minor children in that he will be able to remarry and legitimize them.

This court finds no justification for further delaying this divorce action.