## Beaver v. McColgan

*P. Jeffrey Hill,* for plaintiffs.
*Alvin J. Luschas,* for intervenor.

MYERS, *P.J.,* December 7, 1990—In this case, plaintiffs and defendant agreed to an amicable settlement of a death action. Appropriate documents were then filed, the terms of which were sealed by the court upon petition and stipulation of the parties, and after hearing.

The Press-Enterprise Inc. thereafter filed a petition to intervene, seeking to unseal the documents to permit public disclosure of the contents of the agreement. Intervention was granted by the court, and a subsequent hearing was held upon the merits of the intervenor's petition to unseal the records. That issue is now ready for disposition.

The facts that gave rise to these proceedings follow.

On February 11, 1989, on State Route no. 42 in Columbia County, Pennsylvania, a violent head-on collision occurred between two motor vehicles proceeding in opposite directions. One vehicle was being operated by Kevin Beaver, whose estate is one of the plaintiffs herein, and the other vehicle by Peter McColgan, defendant herein.

Passengers in the Beaver vehicle were his wife, Susan Beaver, and minor son, Nicholas Beaver, aged 2 and one-half years at the time. The passengers are also plaintiffs in the case.

As a result of the collision, Kevin Beaver was killed. His wife, Susan, was seriously injured, and son Nicholas was left paralyzed from the waist down due to a spinal cord injury.

Prolonged wrongful death settlement negotiations followed the collision, and a compromise settlement was subsequently agreed upon by the parties.

On January 23, 1990, plaintiffs filed and served upon defendant a writ of summons. On February 2, 1990, plaintiffs filed a "petition to settle a minor's claim and to approve distribution pursuant to Pa. R.C.P. 2039," together with a "petition to settle, compromise and discontinue a wrongful death action pursuant to Pa.R.C.P. 2206." Simultaneously with the filing of the aforesaid two petitions, plaintiffs also filed a "petition to seal court record," wherein plaintiffs requested this court to seal the petitions to prevent public disclosure of the terms of the compromise settlement agreement.

Hearing was held, and the court granted all three petitions, thereby approving the terms of the settlement agreement and authorizing the prothonotary to seal the record.

Some four weeks later, the Press-Enterprise Inc., a newspaper of general circulation in Columbia County, Pennsylvania and surrounding area, filed the aforesaid petition to intervene, seeking access to the subject record to provide public disclosure of the same.

The court granted the Press-Enterprise's petition to intervene and held a hearing on its merits, i.e. to determine whether or not the record should be unsealed. That ultimate issue encompasses

far-reaching constitutional and common-law considerations and is now before us for disposition.

As the Superior Court stated in *Katz v. Katz,* 356 Pa. Super. 461, 514 A.2d 1374 (1986), "a bright line test has yet to be formulated" to guide the court on this complex question.

At the same time, both federal and state courts have articulated certain fundamental principles applicable thereto which provide some general overall direction.

Under both the common law and the First Amendment to the United States Constitution, criminal and civil judicial proceedings and records are *presumptively* open to the public. *Zenith Radio Corp. v. Matshuskita Electrical Industrial Co.,* 529 F. Supp. 866 (1981); *Publicker Industries Inc. v. Cohen,* 733 F.2d 1059 (1984). (emphasis supplied) However, neither under the common law nor under the First Amendment is that right absolute, but rather is subject to reasonable and sensible limitations.

## I. *Common Law*

The common-law rule, which confers public right to access to court records, provides that every person is entitled to access "provided he (or she) has an interest therein for some useful purpose and not for mere curiosity." *Katz, supra.*

Every court has supervisory powers over civil proceedings in progress before it and may deny access to its proceedings and records where such access may become a vehicle for harmful or improper purposes. *Commonwealth v. Frattarola,* 336 Pa. Super. 411, 485 A.2d 1147 (1984); *Nixon v. Warner Communications Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 580 (1978).

Thus, the public may be excluded temporarily, or permanently, from access to court proceedings, or records thereof, to protect private as well as public interests, or the privacy and reputations of innocent parties. *Katz, supra.*

Furthermore, these are not necessarily the only situations in which public access to judicial records may properly be denied. The decision as to public access must rest upon the sound discretion of the trial court. *Frattarola, supra.*

The trial court's discretion, however, is not open-ended. Rather, access may be denied only if the trial court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires. The trial court's discretion must clearly be influenced by this country's strong tradition of access to judicial proceedings. In balancing the competing interests, the trial court must also give appropriate weight and consideration to the presumption, however gauged, in favor of public access to judicial records. *Frattarola, supra.*

## II. *First Amendment*

The First Amendment to the United States Constitution also embraces the right of access to civil trials to ensure that the constitutionally protected discussion of governmental affairs is an informed one. Public access to civil trials provides information leading to a better understanding of the operation of government, as well as promotes confidence in, and respect for, our judicial system, which could

not be inspired by a system of secrecy. *Publicker Industries Inc. v. Cohen,* 733 F.2d 1059 (3d Cir. 1984).

Under First Amendment rulings, the party seeking closure of a hearing, or the sealing of a transcript, bears the burden of showing that the material is the kind of information that courts will protect, and that there is good cause for the order to issue. *Zenith Radio Corp. v. Matshuskita Electrical Industrial Co., supra; Publicker Industries, supra.* Good cause is established by a showing that disclosure will work a clearly defined and serious injury to the party seeking closure.

The Pennsylvania Superior Court in *Commonwealth v. Frattarola, supra,* addressed the First Amendment right to access more specifically in an opinion filed in December 1984 (after the *Publicker Industries* decision had been handed down). In a concurring opinion, Judge Wiend stated that "[T]he media's argument that there is a First Amendment *guarantee* of media access to judicial records and documents, although accepted by the dissent, is erroneous. The First Amendment guarantees freedom of the press; it does not grant to the news media a right to access to judicial proceedings and records which is greater than the right of access enjoyed by the general public. Once beyond the confines of the courthouse, a news gathering agency may publicize, within wide limits, what its representatives have seen and heard in the courtroom. But the line is drawn at the courthouse door; and within, a reporter's constitutional rights are no greater than those of any other member of the public." *Commonwealth v. Frattarola, supra.* (emphasis supplied)

### III. *Discussion*

After an exhaustive review of the law and the facts of this particular case, we conclude that the court was well within its discretion to seal the records of the settlement agreement in this case for the following reasons.

First, in this case, one of the conditions upon which the settlement agreement was attained was predicated upon the fact that the terms of the settlement would be kept confidential and not released to the public. Counsel for the intervenor was so advised prior to the hearing held on the intervenor's petition to unseal the record.

In short, confidentiality as to its terms was a key ingredient in finalizing this settlement agreement.

The value and necessity of a vigorous judicial policy that encourages fair and amicable settlement of civil claims are patently obvious. Amicable settlement of civil cases has become not only a permissible and desirable goal, but a practical necessity. Such settlements enable litigants to avoid not only the expense but also the painful and emotional trauma of the trial of a death action. Also saved by the settlement agreement is the expenditure of judicial resources in our already overcrowded judicial dockets. See *Bank of America v. Hotel Rittenhouse, supra,* for a thorough discussion of this issue.

Clearly, the strong public and private interests that encourage amicable settlement of private litigation is particularly appropriate under the circumstances of the within case.

Second, it should be noted that if a minor were not a party to this action, the amicable settlement could have been reached without the filing of any documents. If a summons or pleading had been filed prior to settlement where no minor was involved, the case

could have been discontinued by the parties without the filing of the settlement documents.

However, since the minor child survived and is a party to this wrongful death action, Rules 2039(a) and 2206(a) of Pa.R.C.P. become applicable and state in their pertinent sections:

"Rule 2039. *Compromise, settlement, discontinuance, and distribution*

"(a) No action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor."

"Rule 2206. *Settlement, compromise, discontinuance and judgment*

"(a) No action for wrongful death in which a minor or an incompetent has an interest shall be discontinued nor shall the interest of a minor or an incompetent in any such action or in a judgment for damages recovered therein be compromised or settled until the court, upon petition of any party in interest, shall allow the discontinuance or approve the compromise or settlement as being fair and equitable."

Therefore, in this case, under the above Rules of Civil Procedure, it was necessary for plaintiffs to file relevant documents and pleadings as well as incumbent upon the court to hold a hearing thereon. There is no question but that the aforesaid Rules of Civil Procedure are well founded and based upon sound reasoning to protect the interest of the minor involved, including his future well-being. It would be inconsistent and incompatible with public policy and with the very concept of these Rules to draw upon them to create a public posture that would be detrimental to the minor they are specifically intended to protect.

Third, at the hearing held on the intervenor's petition, the only witness to testify was Susan Beaver, surviving spouse and guardian of the minor.

She stated that she believed the terms of the monetary settlement agreement were a private matter. She expressed a strong concern that if the monetary terms were made public, she and her handicapped minor son (now about four years of age) would be exposed to real or potential undue harm, danger, and/or harassment for years to come.

Mrs. Beaver further testified that she already had been approached several times by a persistent investment broker, as well as a building contractor. The former exerted pressure upon her to invest monies, while the latter had already prepared a building contract which he encouraged her to sign. She stated that she also feels a real fear from the intangible dangers that could befall her as a young widow, both as to her safety and privacy at home and elsewhere, if the monetary settlement terms were made public.

Voicing an even stronger concern for the safety and well-being of her handicapped minor son, Mrs. Beaver alluded to the many obvious ways in which he could become the victim of designing persons and ridiculed and embarrassed by his peers or others, if his present and future financial circumstances were made public at this time.

For the reasons set forth herein, we conclude that plaintiffs, under those circumstances, have successfully rebutted the presumption that civil judicial proceedings and records shall be open to the public, and further we find that plaintiffs have established an important countervailing interest and have shown good cause why disclosure will work a clearly defined and serious injury to them. See *Publicker*

*Industries v. Cohen, supra; Commonwealth v. Frattarola, supra;* and *Katz v. Katz, supra.*

Having so concluded, we would note for the record that the editor of the intervenor was present at the hearing and was seated at intervenor's counsel table throughout the proceedings. For reasons best known to the intervenor, the editor chose not to testify at the hearing and delineate the public interest alleged in the petition. In short, his lips remained sealed during the proceedings in which the intervenor sought to unseal the judicial records pertaining to a private compromise settlement of a death action involving a minor.

While the editor had every right to remain silent, that silence particularly perplexes us in view of the holdings in *Katz v. Katz, supra; Commonwealth v. Frattarola, supra,* and cases cited therein, which concluded, inter alia, that the public is entitled to access to judicial records "provided the public has an interest therein for some useful purpose and not for mere curiosity." It was further stated that every court has supervisory powers over civil proceedings and records and may deny access where such access may become a vehicle for harmful or improper purposes. The intervenor's silence sheds no light upon whether its petition is based upon mere curiosity or otherwise. It further provides no response under oath to the very real potential for harm which would obviously incur to the surviving plaintiffs and specifically to the minor handicapped child.

Accordingly, under the particular circumstances of this case, we conclude that the interests of justice require that the judicial records and documents filed in the above-captioned action shall remain sealed until the subject minor attains his majority, at which time he may, in his discretion, petition the court to unseal said records and documents.

## ORDER OF COURT

And now, December 7, 1990, after hearing held, it is hereby ordered and decreed that all judicial records and documents filed in the above-captioned matter shall remain sealed until the minor, Nicholas Beaver, attains his majority, at which time he may, in his discretion, petition the court to unseal said records and documents.