Alexander ZDROK, Appellee,

v.

Victoria ZDROK, Appellant.

Superior Court of Pennsylvania.

Argued March 26, 2003.
Filed July 16, 2003.

698

Jeffrey P. Lewis, West Chester, for appellant.

Elliott D. Goldberg, Ft. Lauderdale, FL, for appellee.

BEFORE: JOYCE, ORIE MELVIN and BECK, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Victoria Zdrok, appeals from the trial court's September 4, 2002 order denying her request to close the trial to the public. Because we find no abuse of discretion in this case, we affirm.

¶ 2 The facts and procedural background of this matter may be summarized as follows. The underlying civil suit concerns the enforcement of a marital property agreement. Appellant and her ex-husband Appellee, Alexander Zdrok (Alex), were married in Las Vegas on October 26, 1990. At the time of their marriage, Appellant was a seventeen-year-old foreign exchange student from Kiev, Ukraine attending junior college in Florida. Alex was thirty-seven, twice married and divorced, and a well known Philadelphia lawyer. Appellant had consulted Alex, because he spoke fluent Russian, for legal advice on how to extend her student visa. Alex subsequently proposed that she marry him to solve her legal problems. After nearly six years of a stormy marriage Appellant sought a divorce. She claims that she was forced to sign, without the advice of counsel, what is titled a "Marital Settlement Agreement," (Agreement) in which she purportedly agreed to pay Alex a portion of her future earnings for ten years after their divorce.

¶ 3 During their marriage and while Appellant was attending graduate school pursuing a joint law and psychology degree, she was discovered by a Playboy Magazine talent scout and thereafter was selected as a Playboy Playmate in October 1994. Alex commenced this action in January 2001 for an accounting of income earned by Appellant from sources covered by the Agreement. Specifically, Alex is seeking revenues he claims she generates from selling nude pictures and videos of herself on her

website. Just prior to trial Appellant moved *in limine* for an order closing the trial to the public and the press, calling the trial court's attention to the case of *Katz v. Katz*, 356 Pa.Super. 461, 514 A.2d 1374 (1986), *appeal denied*, 515 Pa. 581, 527 A.2d 542 (1987). Following argument by Appellant's counsel the trial court orally denied the motion and commenced trial. After a half-day's testimony, however, Appellant became ill; and the trial court continued the trial until sometime after Appellant delivered her first child. This appeal followed.[1]

¶ 4 Appellant presents the following questions for our review:

1. Whether the trial court erred as a matter of law or abused its discretion in denying Appellant's motion in *limine* to preclude the public by failing to consider the criteria set forth in *Katz v. Katz*, 356 Pa.Super. 461, 514 A.2d 1374, 1379 (1986), *appeal denied*, 515 Pa. 581, 527 A.2d 542 (1987) for the closing of trials to the public?

2. [Alternatively,] [t]o the extent the trial court considered the appropriate criteria for the closure of trials, whether the trial court erred as a matter of law or abused its discretion in applying those criteria to the facts in this case?

Appellant's brief, at 3.[2]

■■■ ¶ 5 Our standard of review of a trial court's decision to grant or deny access to judicial proceedings is an abuse of discretion. *In the Interest of M.B.*, 819 A.2d 59 (Pa.Super.2003) (citations omitted). In this Commonwealth, the common law and the Pennsylvania Constitution

support the principle that there is a presumption that all court proceedings are open to the public. This presumption extends to not only criminal and civil proceedings but also to juvenile dependency proceedings. *See id* (applied in juvenile dependency proceeding); *see also, Storms v. O'Malley*, 779 A.2d 548, 569 (Pa.Super.2001), *appeal denied*, 570 Pa. 688, 808 A.2d 573 (2002) (applied in civil action); and *Commonwealth v. Contakos*, 499 Pa. 340, 453 A.2d 578 (1983) (plurality) (criminal case application).

■■■ ¶ 6 As we reiterated in *M.B.*:
There are two methods for analyzing requests for closure of judicial proceedings, each of which begins with a presumption of openness—a constitutional analysis and a common law analysis. *See R.W.[ v. Hampe]*, [426 Pa.Super. 305,] 626 A.2d [1218] at 1220 n. 3 [1993]; *Storms*, 779 A.2d at 569. Under the constitutional approach, which is based on the First Amendment of the United States Constitution and Article I, Section 11 of the Pennsylvania Constitution, the party seeking closure may rebut the presumption of openness by showing that closure serves an important governmental interest and there is no less restrictive way to serve that interest. Under the common law approach, the party seeking closure must show that his or her interest in secrecy outweighs the presumption of openness. *See R.W.*, 426 Pa.Super. 305, 626 A.2d 1218 at 1220 n. 3; *Katz*, 514 A.2d at 1377.

*M.B., supra*, at 62 n. 2. Because the instant request for closure does not involve the press, nor has Appellant made a constitutional challenge, and the issue before

---

1. Appellant properly relies on the collateral order doctrine and *Katz, supra,* at 1376–1377, for support of this Court's jurisdiction to now hear this matter.

2. Appellee took no position on the motion in the trial court and has informed this Court that he will take no position on this appeal.

us can be resolved under the common law, we need not engage in the constitutional analysis. *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983); *Ballou v. State Ethics Comm'n,* 496 Pa. 127, 436 A.2d 186 (1981); *Commonwealth v. Kennedy,* 413 Pa.Super. 95, 604 A.2d 1036 (1992).

¶ 7 Instantly, Appellant contends that the trial court's ruling totally ignored both the holding and the reasoning of *Katz* and failed to apply any of the applicable criteria discussed in that allegedly dispositive opinion to the facts at bar. We disagree with both assertions.

¶ 8 In *Katz,* this Court referenced some of the legitimate considerations that go into the decision of whether or not to close a trial. We stated generally that:

the public may be 'excluded, temporarily or permanently, from court proceedings or the records of court proceedings to protect private as well as public interests: to protect trade secrets, or the privacy and reputations [of innocent parties], as well as to guard against risks to national security interests and to minimize the danger of an unfair trial by adverse publicity.' 'These are not necessarily the only situations where public access … can properly be denied. A bright line test has yet to be formulated. Meanwhile, the decision as to public access must rest in the sound discretion of the trial court.'

*Katz,* 514 A.2d at 1377–78 (citations omitted).

¶ 9 However, contrary to Appellant's assumption, we did not make a determination of whether those factors presented in *Katz* necessarily merited closure of the Katz equitable distribution proceedings. Rather, we only held:

that the trial court erred when it concluded that it had been divested of discretion and could not exclude the public from the equitable distribution hearings.

Both the decision in *Publicker Industries [v. Cohen,* 733 F.2d 1059 (3rd Cir. 1984)] and Pa.R.C.P. 223(a)(4) direct that the trial court determine whether there is good cause for excluding the public from civil proceedings. This determination must necessarily depend upon the exercise of the trial court's discretion, which will not be reversed absent an abuse thereof. So that its order may be reviewed on appeal, however, the trial court must state its reasons for the action which it takes.

*Id.* at 1381. Because the trial court in *Katz* did not expressly say what it would do in the exercise of its discretion, we remanded the matter to the trial court so that it would have the opportunity to exercise its discretion and give reasons for its ruling. Accordingly, we never ruled on whether the reasons advanced by Mr. Katz justified closure. Rather, each request for closure must be decided on its own facts. Thus, Appellant's assertion that her situation equates with an equitable distribution proceeding and presents an even stronger case for closure than was presented in *Katz* is unavailing.

¶ 10 Unlike *Katz,* the trial court here exercised its discretion and gave reasons for its ruling. Our review indicates that the trial court was aware of the applicable standard as requiring a showing that the material is the kind of information that courts will protect and that there is good cause for the closure order to issue. Moreover, the trial judge noted that evidence of the sordid details of the parties' marriage will be precluded at trial, as equitable distribution is not at issue. Rather, all that will be inquired into is whether a contract exists, whether it was entered into by fraud or duress, and if there is a contract, whether the parties have complied with its terms.

¶ 11 After review applying the common law balancing approach, we agree with the trial court that Appellant did not establish that her personal interest in secrecy outweighs the traditional presumption of openness. Here, Appellee initiated an assumpsit action—an adversarial proceeding—in which he claims entitlement to certain earnings of Appellant. The fact that Appellant's business ventures may have made her well-known to a certain segment of the public does not of itself entitle her to a closed trial. Many a "celebrity" has faced open court proceedings in both the criminal and civil realm. As for her claims that certain intimate details of the parties' stormy marriage may cause her embarrassment and a potential target of stalking if placed before the court, we find such claims spurious. The trial court has already indicated that it intends to preclude any such details from being admitted. We fail to discern how examination of the details of whether a valid contract exists and the income earned from Appellant's business ventures will make it more likely that stalkers would be able to locate her and do injury to her or her family. The fact that Appellant must defend these proceedings in open court does not require the disclosure of the location of her personal residence. The trial court has applied the appropriate analysis and in doing so fashioned the least restrictive means available short of total closure under the circumstances. Accordingly, we find the trial court did not abuse its discretion in concluding that the Appellant failed in her burden to prove good cause for a closure order to issue.

¶ 12 Order affirmed.