J-A12036-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| JOHN B. O'LAUGHLIN AND GRACE VETERINARY CLINIC, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1512 WDA 2019 |
| LAURIE A. JOSEPH, DVM | : | |

Appeal from the Judgment Entered October 18, 2019,
in the Court of Common Pleas of Westmoreland County,
Civil Division at No(s):  No. 4187 of 2015.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                FILED AUGUST 11, 2020

Appellants, Dr. John B. O'Laughlin, DVM, and his business, Grace Veterinary Clinic, Inc.,[1] appeal from the judgment entered upon the jury verdict, finding that Dr. O'Laughlin breached a contract to sell the assets of that business.  For the reasons below, we affirm.

Dr. O'Laughlin ran a veterinary practice for nearly two decades.  At the end of 2014, he contracted to sell its assets, real estate, and patient list to Appellee, Dr. Laurie A. Joseph, DVM.  The parties put their contract into writing and signed it.  According to the writing, Dr. O'Laughlin would still own the business's name, but Dr. Joseph could continue to use the name for six

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] For simplicity sake, this Memorandum refers to them collectively as "Dr. O'Laughlin."

months after the sale. The parties' disagreement over this written contract has spawned civil actions in three counties.

Dr. Joseph filed the first legal action. On August 25, 2015, she sought an injunction against Dr. O'Laughlin in Fayette County to block him from violating a non-compete provision of the contract. Three days later, Dr. O'Laughlin responded by filing this action in the Court of Common Pleas of Westmoreland County. Then in 2017, Dr. O'Laughlin filed a malpractice suit against the attorney who had drafted the contract in Allegheny County. Dr. O'Laughlin asserted his former attorney's "drafting of the contract and representation . . . in selling [the assets] to Dr. Joseph fell below legal industry standards."[2] O'Laughlin's Brief at 9.

The injunction matter from Fayette County reached this court in the fall of 2015 after that trial court granted Dr. Joseph an injunction. See Joseph v. O'Laughlin, No. 1706 WDA 2015 (Pa. Super. 2017) (unpublished).[3] There, Judge Musmanno described the facts as follows:

> On December 23, 2014, [Drs.] O'Laughlin and Joseph executed an asset-transfer agreement ("the [contract]") outlining [Dr.] Joseph's purchase of the [clinic assets]. The [contract] included the following restrictive covenant:

_____

[2] The Allegheny Court of Common Pleas eventually transferred that third suit to Westmoreland County. O'Laughlin v. Moore, No. GD-17-003506 (C.C.P. Allegheny 2017), trans. to No. 5578 of 2017 (C.C.P. Westmoreland 2017). The record does not appear to indicate the status of that action.

[3] Our decision in that prior appeal has precedential value as to the parties at bar. Pa.R.A.P. 126.

> [Dr.] O'Laughlin acknowledges and agrees that he will not be involved in any of the following activities at any location within 50 miles of the veterinary clinic ("Geographic Area"). [Dr.] O'Laughlin covenants and agrees that for a period of five years following the execution of this [contract], he shall not directly or indirectly . . . participate in any business or practice within the Geographic Area that is in competition in any manner whatsoever with the Buyer. Further, [Dr.] O'Laughlin shall not contact, solicit, or engage in any activity to contact or solicit, indirectly or directly, any client, past, present, or future, during that five year period.

[Contract], 12/24/14, ¶ 3. The restrictive covenant, which expire[d] on December 24, 2019, comprised $17,973.50 of the $750,000 sale price. Id. at ¶ 4.

Approximately six months later, on July 2, 2015, [Dr.] O'Laughlin filed a Petition for Special Exemption with the Fayette County Zoning Hearing Board, wherein he requested permissive use to operate a veterinary clinic at 114 Eannotti Road, Dawson Pennsylvania, which is approximately eight miles from [his prior clinic]. The zoning hearing was scheduled for August 26, 2015. Meanwhile, [Dr.] O'Laughlin formed a limited liability company (O'Laughlin Veterinary Services), created a Facebook page of the same name, and purchased equipment. The Facebook page included a link that advised followers that the clinic was, "coming soon," and when activated, the link directed users to the business's location on a map.

On August 25, 2015, [Dr.] Joseph filed an action for injunctive relief . . . to permanently enjoin [Dr.] O'Laughlin from operating a veterinary clinic and prohibit him from seeking the zoning variance that was scheduled for a hearing the following day. On the same date, [Dr.] Joseph filed a self-styled Motion for Preliminary/Permanent Injunction requesting the identical relief.

Joseph v. O'Laughlin, Memorandum at 1-3 (some punctuation omitted; footnotes omitted). The Court of Common Pleas of Fayette County found Dr.

O'Laughlin breached the non-compete clause and issued a permanent injunction against him. This Court affirmed.[4]

In Count I of the instant suit, Dr. O'Laughlin claimed Dr. Joseph also breached the written contract (1) by refusing to employ him following the transfer of the assets to her, (2) by not repaying a PNC loan he claimed she agreed to assume, and (3) by not making payments on a leased Heska blood machine. In Count II, he sought a declaratory judgment that the non-compete provision, i.e., the clause at issue in the Fayette County litigation, was invalid.[5]

Dr. Joseph filed a counterclaim for attorney's fees. She alleged Count II constituted "vexatious, obdurate, and . . . bad faith" litigation, because she averred that her Fayette County action resolved Count II. Joseph's Answer and Counterclaim at 15.

Eventually, the parties tried this case before a Westmoreland County jury. In preparation for trial, the parties filed motions in limine, two of which are at issue in this appeal.

First, the trial court denied a motion in limine by Dr. O'Laughlin in which he sought to prevent his former attorney from testifying against him, based

_____

[4] Judge Bowes dissented. She reasoned that nothing in the non-compete clause of the contract prohibited Dr. O'Laughlin from laying the groundwork for a new veterinary clinic, so he could open a new clinic on the day when the non-compete provision expired.

[5] Dr. O'Laughlin also had a third count in his complaint seeking injunctive relief against Dr. Joseph. That claim is no longer in issue.

on the attorney-client-privilege statute.[6]  The trial court ruled Dr. O'Laughlin had waived the privilege when he sued his former attorney for malpractice and published his version of their private conversations in a complaint that Dr. O'Laughlin filed in the Department of Court Records of Allegheny County.  At trial, Dr. O'Laughlin's former attorney testified that Dr. O'Laughlin never asked him to include terms regarding the PNC loan or blood machine in the written contract.  See N.T., 5/9/19, at 623-25.  Thus, the written contract did not contain those terms.

Second, the trial court granted a motion in limine, which barred Dr. O'Laughlin from presenting evidence of an alleged, oral contract for employment between the parties.  This effectively granted Dr. Joseph a directed verdict on the breach-of-employment-contract claim, because the ruling prevented Dr. O'Laughlin from establishing that the oral contract existed.  The written contract made no mention of Dr. Joseph employing Dr. O'Laughlin following the transfer of assets to Dr. Joseph.

If the trial court had permitted Dr. O'Laughlin to offer evidence of the alleged, oral contract, he would have introduced the following:

> (1)   [A sample of] the flier sent out to [the clinic's] customers, indicating Dr. O'Laughlin would still be available to provide veterinary care and that he would be available by phone and the Internet;
>
> (2)   Dr. O'Laughlin's testimony that he entered into an oral employment [contract] with Dr. Joseph to provide

_____

[6] 42 Pa.C.S.A. § 5928.

veterinary services at her clinic after the sale, as her employee;

(3)     Dr. Joseph's deposition testimony that she was aware of the post card flyer before it was sent to her clients, that she did not object to it, that Dr. O'Laughlin had specialized, laparoscopic-surgical skills that her clients would have benefitted from, and that she approved of Dr. O'Laughlin performing and being paid for such surgeries in her clinic after the closing, despite the non-compete clause;  and

(4)     Leslie Hauser's testimony that she maintained a list of customers for whom Dr. O'Laughlin was to perform surgeries on animals at [the clinic] following [Dr. Joseph's] purchase of the clinic, all pursuant to the oral employment [contract].

O'Laughlin's Post-Trial Motion at 6.

The jury returned a verdict in favor of Dr. Joseph.  Dr. O'Laughlin moved for a new trial.  He argued the trial court erred in two respects.  First, Dr. O'Laughlin claimed that permitting his former attorney to testify against him violated the attorney-client privilege.  Second, he asserted the trial judge, who ruled upon his motion in limine, misapplied the rule of parol evidence regarding the alleged, oral contract of employment.[7]

The post-trial-motions judge denied relief, based partially on the coordinate-jurisdiction rule, and this timely appeal followed.

Dr. O'Laughlin raises two appellate issues:

_____

[7] A different, now-retired member of the Westmoreland County bench had already ruled in pre-trial matters that the written contract was an integrated agreement and therefore excluded parol evidence from his considerations upon an objection by Dr. O'Laughlin.

1.  Whether the trial court erred as a matter of law and substantially prejudiced [Dr. O'Laughlin], requiring a new trial to be granted, by permitting [Dr. O'Laughlin's] former attorney to testify . . . on attorney-client-privileged communications?

2.  Whether the trial court erred as a matter of law and substantially prejudiced [Dr. O'Laughlin], requiring a new trial to be granted, by ruling that the parol evidence rule precluded Dr. O'Laughlin from showing that [Dr. Joseph] breached an oral contract to employ him following her purchase of his veterinary clinic's assets, either through an oral modification of the [contract] at issue or by entering into a separate and subsequent oral contract?

O'Laughlin's Brief at 4.

We begin our analysis, as always, with our scope and standard of review. They are the same for both issues.

When reviewing the trial court's decision not to order a new trial after a jury verdict, the Supreme Court of Pennsylvania has admonished this Court to tread carefully. "Although all new-trial orders are subject to appellate review, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." Harman ex rel. Harman v. Borah, 756 A.2d 1116, 1121–22 (Pa. 2000).

This abuse-of-discretion standard arises from the two-step process that trial courts undertake when ruling upon motions for a new trial. Harman said:

> First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial

- 7 -

> court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

Id. at 1122 (citations omitted). "To review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis." Id.

First, we review "the decision of the trial court that [no] mistake occurred." Id. "[T]he appellate court's review is limited in scope to the [alleged errors], and the appellate court must review [those alleged errors] under the appropriate standard." Id. at 1123 (some punctuation omitted). "If the [alleged] mistake involved a discretionary act, the appellate court will review for an abuse of discretion. If the mistake concerned an error of law, the court will scrutinize for legal error." Id. (citation omitted).

If we conclude that a mistake occurred, we then must consider whether the error was harmless or prejudicial. The question becomes whether, given the mistake, "the trial court abused its discretion [by denying] the request for a new trial." Id. "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." Id. If the mistake did not prejudice the party seeking a new trial, then the trial court did not abuse its discretion by denying post-trial relief.

A.    Attorney-Client Privilege

For his first issue, Dr. O'Laughlin claims the trial court erred by denying his motion in limine to prevent his former attorney from testifying against him. He argues that attorney-client privilege required the trial court to award him a new trial, because the privilege shielded the conversations he and his former attorney had when negotiating and drafting the contract.

Beginning with the first step of our review, as discussed above, we apply the standard of review applicable to the alleged error. "Whether the attorney-client privilege or the work product doctrine protects a communication from disclosure is a question of law," and our "standard of review over questions of law is de novo, and the scope of review is plenary." In re Thirty-Third Statewide Investigating Grand Jury, 86 A.3d 204, 215 (Pa. 2014).

The parties do not dispute that the communications between Dr. O'Laughlin and his prior attorney fell within the scope of the privilege. They only dispute whether Dr. O'Laughlin waived that privilege when he sued his former attorney and disclosed what they discussed in court records. The statute regarding attorney-client privilege provides, in relevant part, "In a civil matter, counsel shall not be competent or permitted to testify to confidential communications made to him by his client . . . unless . . . this privilege is waived upon the trial by the client." 42 Pa.C.S.A. § 5928.

Dr. O'Laughlin contends that filing a malpractice complaint against his former attorney only constituted a waiver of the privilege in that matter but not in this lawsuit. See O'Laughlin's Brief at 19-24. He also contends that

allowing Dr. O'Laughlin's prior attorney to testify was "contrary to public policy." Id. at 22. He indicates that he had to sue his former attorney during the pendency of this action "to preserve the statute of limitations on [the] malpractice claim." Id. Dr. O'Laughlin therefore tells this Court, "Parties in cases with a related, attorney-malpractice claim should not be forced between the Scylla of allowing their malpractice claim to expire and the Charybdis of having privileged matters from their malpractice claim taint their originally filed claim."[8] Id. at 23. Thus, he urges us to adopt a "limited-waiver doctrine" to allow him to preserve both his malpractice claims and his attorney-client privilege in this action. Id.

The Supreme Court of Pennsylvania has recently said, "disclosure to a third party generally waives the attorney-client privilege . . . ." BouSamra v. Excela Health, 210 A.3d 967, 977 (Pa. 2019). Additionally, at common law, we presume "that the public may inspect and copy judicial records and

_____

[8] Scylla and Charybdis are two of the mythical monsters with whom the Greek hero Odysseus and his seafaring crew must contend in Homer's THE ODYSSEY (circa 700 B.C.E.). The monsters live on opposite sides of a narrow portion of the Mediterranean Sea – presumably the Strait of Messina that separates Sicily from the Italian mainland. Scylla, on the eastern shore, is a six-headed beast with snake-like necks and shark-like teeth. Charybdis dwells on the western side of the strait, swallowing the sea and vomiting it up three times a day. She devours anything in the water, including whole ships.

The strait is so narrow that it is impossible for vessels to pass without encountering either Scylla or Charybdis. Following the sorceress Circe's advice, Odysseus hugs the eastern side, thereby allowing Scylla to eat six of his men while avoiding Charybdis who would have killed them all. Hence, to say that one must choose between Scylla and Charybdis means to face a choice between two bad outcomes.

public documents." Stenger v. Lehigh Valley Hosp. Ctr., 554 A.2d 954, 960 (Pa. Super. 1989). "The presumption extends to documents which have been filed with the court, such as pleadings, arrest warrant affidavits, and settlement agreements, and which are considered public records." Id.

Dr. O'Laughlin filed a civil complaint in the Court of Common Pleas of Allegheny County, where he published the private conversations between his former attorney and himself to the whole world. Thus, he has waived the attorney-client privilege that had rendered his former attorney "not . . . competent or permitted to testify" about them. 42 Pa.C.S.A. § 5928. Had Dr. O'Laughlin wished to waive that privilege in a limited manner (namely, only to the extent necessary to sue his former attorney), Dr. O'Laughlin could have moved the Allegheny trial court to allow him to file his malpractice complaint under seal and thereby shield it from public view. Or, he could have filed it in a redacted form for public review and an unredacted version for the parties and the trial court. See Allegheny County Local Rule of Admin. 6001.7. Had he done so, the contention that he only waived it to the extent necessary for preserving his malpractice claims might be more persuasive. On this record, however, it is not.

Moreover, this waiver of attorney-client privilege was of Dr. O'Laughlin's own making. The statute of limitations on malpractice suits did not cast a wavier dilemma upon him, as he suggests in his brief. Like Odysseus, who could have avoided Scylla and Charybdis by sailing around Sicily rather than through the Strait of Messina, Dr. O'Laughlin could have avoided waiver by

asking the court to seal the malpractice complaint in Allegheny County. He neglected to do so and, instead, published the private discussions he had with his former attorney to every third party on the planet. The law will not, in the name of some nebulous "public policy," ignore Dr. O'Laughlin's missteps and restore a privilege he voluntarily discarded.

Dr. O'Laughlin's first appellate issue is meritless.

B.      Parol Evidence of an Oral Contract for Employment

As his second issue, Dr. O'Laughlin contends the trial court misapplied the rule against parol evidence when it granted Dr. Joseph's motion in limine. This ruling prevented Dr. O'Laughlin from proving the existence of an alleged, oral contract for employment with Dr. Joseph.

"[O]ur standard of review regarding a challenge to the admissibility of evidence is very narrow; we will only reverse a ruling of the trial court if there is an abuse of discretion . . . ." Kehr Packages, Inc. v. Fidelity Bank, National Association, 710 A.2d 1169, 1172 (Pa. Super. 1998).

First, Dr. O'Laughlin contends that the rule of parol evidence does not apply, because the written contract that he and Dr. Joseph signed does not contain a full-agreement clause. Without such a clause, Dr. O'Laughlin believes that Dr. Joseph cannot prove that the writing is fully integrated, constituting the "entire agreement" of the parties. O'Laughlin's Brief at 31.

The judge who ruled upon Dr. O'Laughlin's post-trial motions and whose order and opinion we review here, did not deny post-trial relief, because the judge disagreed with Dr. O'Laughlin's argument that the contract was not fully

integrated. Instead, the Honorable Harry F. Smail, Jr. based his post-trial ruling solely upon the coordinate-jurisdiction rule. He concluded that another judge's pre-trial ruling – namely, that the contract was integrated – bound him.[9]

Judge Smail opined as follows:

> . . . the Honorable Anthony G. Marsili previously applied the parol-evidence rule to the [written contract] in the present case by ruling on an objection at the time of a Contempt Hearing held on April 27, 2016 . . . Judge Marsili's ruling, then, must stand for the proposition that the [written contract] is an integrated contract. Under Pennsylvania law, "the coordinate-jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." Zane v. Friends Hosp., 836 A.2d 25, 29 (Pa. 2003). This Court then cannot alter its predecessor Court's resolution of the legal question here, and so the [written contract] must be treated as an integrated contract for purposes of the parol-evidence rule.

Trial Court Opinion, 9/5/19, at 4-5 (some punctuation and citation omitted). The post-trial-motions judge therefore concluded that, under the doctrine of the law of the case, the contract was an integrated contract and the parol-evidence rule applied.[10]

---

[9] Dr. O'Laughlin had no standing to challenge that pre-trial ruling either in post-trial motions or on appeal, because Judge Marsili's ruling was in favor of Dr. O'Laughlin. His prior attorney had objected to Dr. Joseph's attempt to introduce parol evidence regarding their negotiations and won that objection.

[10] Arguably, this analysis rested upon a procedural error by the post-trial-motions judge. A post-trial-motions judge sits in place of the court of common

Dr. O'Laughlin did not challenge this basis for denying his post-trial relief on appeal. "Pennsylvania Rule of Appellate Procedure 2116(a) mandates that an appellant must present all issues on appeal in the Statement of Questions Involved section of his brief." Thomas v. Elash, 781 A.2d 170, 176–77 (Pa. Super. 2001). Hence, "[i]ssues not addressed in the Argument section of an appellate brief are waived for purposes of appeal." Id. at 177.

Because Dr. O'Laughlin did not appeal the post-trial-motions judge's application of the coordinate-jurisdiction rule to hold that the written contract was fully integrated, that issue is not before us. Dr. O'Laughlin has waived his opportunity to challenge the post-trial-motions judge's analysis. Thus, the judge's ruling that the written contract was fully integrated and that the parol-evidence rule applies has become final. As a matter of law, the written contract is fully integrated.

_____

pleas en banc, and, therefore, that judge may overrule the prior decisions of her or his colleagues. "All post-trial motions and other post-trial matters shall be heard and decided by the trial judge unless the trial judge orders that the matter be heard by a court en banc of which the trial judge shall be a member." Pa.R.C.P. 227.2

"[T]he post-trial-motion process is a clearly distinct procedural posture . . . and . . . the considerations of the judge are different at each procedural stage." Riccio v. American Republic Insurance Co., 705 A.2d 422, 425 (Pa. 1997). Thus, the Supreme Court has held "the coordinate-jurisdiction rule does not apply to bar a substituted judge hearing post-trial motions from correcting a mistake made by [a colleague]." Id. at 426 (emphasis added). In other words, a post-trial-motions judge exercises the common pleas court's en banc jurisdiction, which is not of the same nature of or coordinate to a pre-trial or trial judge's jurisdiction.

In the alternative, Dr. O'Laughlin argues, even if the written contract was fully integrated, the trial court still should have allowed him to prove the oral, employment contract by parol evidence. He claims this alleged, oral contract was separate from the written contract upon which he based this lawsuit. Dr. O'Laughlin does not believe that reasonable parties would have included it in the language of the written contract to transfer the assets of a veterinary clinic.[11] And, failing that, he believes that the trial court "also should have permitted [him] to show that he and Dr. Joseph subsequently modified the [written contract] with an oral employment agreement." Dr. O'Laughlin's Brief at 36.

We proceed directly to the second prong of the test for reviewing an order denying post-trial relief and explain why, even if the trial court erred regarding the parol-evidence rule, that error was harmless, and, therefore, the trial court did not abuse its discretion by denying Dr. O'Laughlin's motion for a new trial.

In his Second Amended Complaint, Dr. O'Laughlin pleaded that the employment contract was part of the parties' original, written contract. See Dr. O'Laughlin's Second Amended Complaint at ¶22(f). In fact, he premised

_____

[11] The trial court disagreed with Dr. O'Laughlin's characterization of what would be reasonable matters to include in a fully integrated contract. See Trial Court Opinion, 9/5/19, at 6 (stating, "It stands to reason that any additional agreement concerning [Dr.] O'Laughlin continuing to be employed by [Dr.] Joseph is a subject 'so interrelated' to the subject of the [written, integrated contract] 'that both would be executed at the same time and in the same contract;'" quoting Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Investments, 951 F.2d 1399, 1405 (3d Cir. 1991)).

Count I of his complaint alleging "Breach of Contract" upon Dr. Joseph materially breaching the written, fully integrated contract. Pennsylvania law is clear that, "Statements of fact by one party in pleadings . . . are termed judicial admissions and are binding on the party. Judicial admissions are deemed true and cannot be contradicted by the admitting party." Cogley v. Duncan, 32 A.3d 1288, 1292 (Pa. Super. 2011) (emphasis added).

Having only pleaded that Dr. Joseph materially breached only the written contract, Dr. O'Laughlin may not contradict this judicial admission, as he attempts to do with his remaining two theories. He bases both theories upon the alternative facts that the parties entered a separate, oral contract for employment or modified their written contract. These alternative facts contradict the facts and theory of the case that Dr. O'Laughlin pleaded in his complaint – i.e., that Dr. Joseph breached the original, written contract, itself. He may not retry the case on alternative factual theories that controvert the allegations of his operable complaint.

Accordingly, the trial court did not abuse its discretion by refusing to grant him a new trial based upon alternative allegations, even if it erroneously concluded that Drs. O'Laughlin and Joseph would have included the terms of employment in the written contract, had they agreed to such a deal.

Dr. O'Laughlin's second and final issue warrants no relief.

Judgment affirmed.

- 16 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/11/2020</u>